Points decided.

[No. 4,059.]

# THE PEOPLE EX REL. JOHN L. LOVE, ATTORNEY GENERAL, v. MONROE ASHBURY, AUDITOR OF THE CITY AND COUNTY OF SAN FRANCISCO.

TAXING SOLVENT DEBTS.—Solvent debts are liable to taxation.

DUTY OF AUDITOR IN RELATION TO DELINQUENT TAXES.—When any of the taxes of one fiscal year are returned as delinquent, it is the duty of the Auditor to enter the same on the assessment roll of the next fiscal year, and then to enter the same upon the duplicate assessment book, unless they have been canceled by the Board of Supervisors under the affidavit of the Collector required by section thirty-eight hundred of the Political Code.

POWER OF BOARD OF SUPERVISORS TO CANCEL TAXES.—The Board of Supervisors has no power to cancel any taxes, or the assessment for any taxes, except such as are contained in the list by the Auditor and taken by him from the delinquent list, and as to which the Collector has made affidavit that "he has not been able to discover any property belonging to or in possession of the person liable to pay the same [taxes] whereof to collect them."

IDEM.—Without such affidavit of the Collector, that a delinquent tax cannot be collected, and without the concurrence of the Board of Supervisors with the Collector, in the opinion that it is not collectable, said Board cannot cancel a tax.

CANCELLATION OF DELINQUENT TAX.—A resolution or order of a Board of Supervisors canceling a delinquent tax, because it is not collectable, ought properly to specify each particular tax which is canceled.

IDEM.—A resolution of a Board of Supervisors canceling a tax, without the affidavit of the Collector indorsed on the delinquent list, that it is not collectable, is void, and the Auditor should proceed with his duty in regard to such tax, in entire disregard of such resolution.

PARTIES TO MANDAMUS.—The Collector of taxes is not a necessary party in an application for a writ of mandate to compel an Auditor to enter on an assessment roll the delinquent taxes of the preceding fiscal year.

DUTY OF AUDITOR AS TO DELINQUENT TAX.—The statute does not expressly prescribe the time at which the Auditor shall enter the delinquent taxes on the next assessment roll, but the implication is that it should be done before the duplicate assessment book is delivered to the Collector.

WRIT OF MANDATE ON AUDITOR.—The Auditor may be compelled, by write of mandate to enter on the assessment book the delinquent taxes of the preceding year, even after the duplicate copy of the same has been delivered to the Collector.

APPLICATION to the Supreme Court for writ of mandate to require the respondent, as Auditor of the City and County

of San Francisco, to enter upon the assessment book of that city and county for the fiscal year 1873-4 the unpaid taxes for the fiscal year 1872-3 upon certain solvent debts.

The parties, so far as mentioned in the petition, and the amounts assessed, are as follows: Masonic Savings and Loan Society, assessed at three hundred and sixty-five thousand dollars; Savings and Loan Society, at seven million nine hundred and sixty-eight thousand seven hundred and forty dollars and forty cents; Societie Francaise d'Epargnes, at four million nine hundred and fifty-seven thousand five hundred and eighty-three dollars and seventy-three cents; German Savings and Loan Society, at two million six hundred and twenty thousand and twenty-one dollars; Odd Fellows' Savings Bank, at three million eighty thousand seven hundred and ninety-three dollars; San Francisco Savings Union, at four million two hundred and twenty-seven thousand nine hundred and forty dollars; Hibernia Savings and Loan Society, at eleven million three hundred and fifty-four thousand five hundred and thirty-two dollars; Land Mortgage Union of California, at thirty-three thousand nine hundred and sixteen dollars; Security Savings Bank, at three hundred and thirteen thousand nine hundred and sixty-two dollars and seventy-seven cents; Humboldt Savings and Loan Society, at five hundred and seven thousand three hundred and three dollars. The petition also states that there are many other assessments against divers persons for solvent debts; that the rate of the tax for State purposes was fifty cents in the hundred dollars, and for city and county purposes one dollar in each hundred dollars; that the Auditor delivered a corrected copy of the assessment book to the Tax Collector pursuant to law, on the fourth Monday in October, 1872; that the Collector attempted to collect the taxes but was enjoined [the injunctions were subsequently dissolved by the

Supreme Court]; that on the third Monday in January, 1873, the Tax Collector attended at the office of the Auditor and compared the duplicate assessment book with the original, and marked "paid" in the latter all the taxes so marked in the former, not including the taxes on solvent debts, and then delivered to the Auditor a complete delinquent list, including such taxes; that the Auditor compared the list with the assessment book, certified it to be correct, and delivered it to the Tax Collector on the first Monday in February, 1873; that none of the taxes designated have been paid; that on the 25th of September, 1873, the Tax Collector attended at the office of the Auditor, marked the taxes that had been paid upon the assessment book, but did not mark the delinquent taxes on solvent debts; that at the same time the Auditor requested him to make the affidavit "that the taxes not marked 'paid' had not been paid, and that he had not been able to discover any property belonging to or in the possession of the person liable to pay the same whereof to collect them," which he refused to do, but did make an affidavit that to the best of his knowledge and belief "every person and all property assessed in the delinquent list for the fiscal year 1872–3, on which taxes have been paid, has been credited in the list with such payment;" that the Auditor has not entered these delinquent taxes, or any part of them, on the assessment book for the fiscal year 1873–4; that on the 27th day of September, 1873, the Auditor delivered to the Collector what purported to be a duplicate assessment book for that year, which does not contain the taxes on solvent debts, and though it had been demanded of the Auditor that he should complete the book by inserting those taxes, he had refused to do so, contending that they had been canceled by the order of the Board of Supervisors quoted in the opinion of the Court. The answer sets up the order attempting to cancel the taxes as a defense. The opinion of the Court was filed December 8th, 1873.

The other facts are stated in the opinion and concurring opinion.

*Attorney General Love*, for Petitioner, argued that the affidavit of the Tax Collector required by section three thousand eight hundred of the Political Code was a jurisdictional fact which must appear affirmatively, and that for want of it the order of the Board attempting to cancel the taxes was void.

*Alexander Campbell, Sr.*, for Respondent, raised the point that the Tax Collector, Austin, being a party in interest as one who would have to act with the Auditor if the writ should be granted, should be made a party respondent.

*John B. Felton*, also for Respondent, contended that the Board of Supervisors had discretionary power, under section three thousand eight hundred and one of the Political Code, to cancel the taxes, and an order for that purpose, when made by the Board, must be observed and followed by the Auditor, who is an officer of limited powers. He argued further, that under the law the Auditor has, if he has discharged his duty, transferred the assessment roll to the Collector; so that the mandamus would be too late to control him. The only remedy for the State is to carry the delinquent taxes forward on the roll for next year.

*Creed Haymond*, for the Petitioner, amplified the points made by the Attorney General, and argued that the Tax Collector is not a proper party, because not in default; that it is not competent for the Board to cancel taxes by a sweeping order striking off "taxes upon all solvent debts;" and that the provision of the Code, as to the time the Auditor shall enter the delinquent taxes upon the assessment book, is directory merely, not mandatory.

By the Court, RHODES, J.:

It was determined by the unanimous opinion of the Court
in the recent case of the *Savings and Loan Society* v. *Austin,*
*ante,* p. 415, that solvent debts are liable to taxation.    The
solvent debts in question in this case were, therefore, proper
subjects of taxation, and, so far as appears in this record,
were properly assessed, and entered upon the assessment
roll for the fiscal year 1872–3.    The taxes thereon not
having been paid, those solvent debts were returned as
delinquent; and it became the duty of the respondent, as
the Auditor of the City and County of San Francisco, under
the provisions of section three thousand eight hundred and
two of the Political Code, to enter upon the assessment roll
for the fiscal year 1873–4, the taxes so remaining delinquent,
and, of course, to enter the same upon the duplicate assess-
ment book, unless they had been duly canceled by the Board
of Supervisors.    The Auditor, in justification of his refusal
so to enter those taxes upon the assessment book, sets up
and relies upon a resolution of the Board of Supervisors,
passed October 25th, 1873, which is as follows: "Resolution
number four thousand five hundred and sixty-six (new
series)—Resolved, That the assessment on all solvent debts,
and all solvent debts secured by mortgage on the list of un-
paid taxes furnished by the Auditor on the assessment roll
for the fiscal year 1872–3, be, and the same are hereby
canceled; and the Clerk is hereby directed to return the
said list of unpaid taxes, as corrected by this Board, to the
Auditor, in order that the unpaid taxes remaining on said
list may be entered on the assessment roll for the fiscal year
1873–4."

It is claimed that this resolution is authorized by section
three thousand eight hundred and one, and was passed in
pursuance of the authority there given.    This position is
untenable,    The Board has no authority to proceed to

cancel any taxes other than such as are contained in the list furnished by the Auditor, and taken by him from the delinquent list, after the Collector has made the affidavit required by section three thousand eight hundred to be indorsed thereon, to the effect that "he has not been able to discover any property belonging to, or in the possession of, the person liable to pay the same [taxes], whereof to collect them." In other words, the Board has no power to cancel the taxes, unless the Collector has made the affidavit provided for in that section. It is not intended that the Board should act in the matter without regard to the action or non-action of the Collector, but the purpose is to give the Board authority to cancel such of the taxes returned delinquent and uncollected, because property could not be found out of which to make the taxes, as, in the opinion of the Board, cannot be collected—to cancel those taxes in respect to which it concurs with the Collector that they are not collectable. Without the affidavit, the Board has no jurisdiction to determine that any tax cannot be collected.

We are not required to express any opinion as to whether a sweeping resolution like the one before us is void; but we think it more orderly, and in better accord with the provisions of the statute, for the resolution or order to specify each particular tax which is canceled.

The resolution, for the reasons first stated, is void; and the Auditor should have proceeded in the discharge of his duties, in entire disregard of it.

The Collector is not a necessary party to this proceeding, and, indeed, he would not be subject to a mandamus to compel the performance of any duty pertaining to his office, until he had refused to perform such duty.

The statute does not expressly prescribe the time at which the Auditor shall enter the delinquent taxes on the assessment book; but the implication is that it should be done before the duplicate assessment book is delivered to

the Collector. This implication, however, is not mandatory, but is only directory; and, in our opinion, it is the duty of the Auditor to proceed forthwith to enter the delinquent taxes in question on the assessment book.

Peremptory mandate ordered.

WALLACE, C. J., concurring:

The powers and duties of the Auditor, Collector, and Board of Supervisors, concerning the revenue, are regulated and defined by the Political Code. By section three thousand eight hundred and two of that Code, all taxes *not canceled* must be entered by the Auditor on the assessment book of each succeeding year, until paid. This is the general rule laid down in the Code in respect to delinquent taxes. Authority, exceptional in its character, is given to the Board by section three thousand eight hundred and one to cancel such of the unpaid taxes as in its opinion cannot be collected; but before that authority can be exercised a statement of the amount of the unpaid taxes must be filed by the Auditor with the Clerk of the Board. (Id.) Before this statement can properly be filed with the Clerk, however, the Auditor and Tax Collector must have compared the delinquent list with the assessment book, pursuant to the provisions of section three thousand seven hundred and ninety-seven, and the Collector must have made and indorsed on the delinquent list the affidavit required by section three thousand eight hundred. The Auditor had no authority whatever to transmit the statement of the amount of unpaid taxes to the Clerk of the Board until these proceedings, terminating with the affidavit required by section three thousand eight hundred, had been actually had in his office. It results that the list of unpaid taxes was not properly before the Board, and its action in assuming to cancel the un-

paid taxes mentioned in the petition was irregular, and absolutely without authority, or even the semblance of authority, to do so. In this view it was the plain official duty of the Auditor to place the delinquent taxes of 1872–3 upon the corrected assessment book in his office, and to deliver a copy of the book to the Tax Collector, and this duty he should have performed on or before the fourth Monday of October last. That point of time has elapsed, and the duty has not been performed. The lapse of the time has not, however, relieved him from his official duty in that respect, and it is not yet too late, for by section three thousand eight hundred and eighty-five of the Politfcal Code it is expressly provided that no official act relating to the assessment or collection of taxes shall be rendered invalid merely because such act was not completed within the time required by law. I am therefore of opinion that the writ should issue as prayed for.