WHEATON M. FULLER *vs.* COUNTY OF MORRISON.

December 31, 1886.

Constitution — Gratuitous Publication of Financial Statement — Appropriation for Payment.—A board of county commissioners having neglected to cause a financial statement of the county, prepared by them under Gen. St. 1878, c. 8, § 167, to be published in a newspaper as by that section required, the plaintiff published said statement (which was furnished him by the county auditor) in his newspaper, for the time and in the manner prescribed by law. At the succeeding session of the legislature, an act (Sp. Laws 1885, c. 228) was passed legalizing the publication, and authorizing and requiring the board of county commissioners, out of any moneys in the county treasury not otherwise appropriated, to pay the plaintiff for said publication at rates not exceeding the maximum rates allowed by law for publications of like character. *Held* constitutional.

Appeal by the defendant from a judgment of the district court for Morrison county, where the action was submitted to *Collins*, J., upon the pleadings and stipulated facts.

*W. F. Street* and *C. F. Lamb*, for appellant.

*E. H. Farnham* and *Taylor & Calhoun*, for respondent.

BERRY, J.   Upon the pleadings and findings in this case, it is to be assumed that the purported financial statement for the publication of which plaintiff seeks to recover in this action, was made by the board of county commissioners of Morrison county, in March, 1884, in pursuance of Gen. St. 1878, c. 8, § 167, but that the board neglected to have it published in a newspaper as that section requires; that, the statement having been furnished to plaintiff by the county auditor for publication, he voluntarily published it in his newspaper for the time prescribed by law, viz., for three successive weeks, the last publication occurring on April 4, 1884. In the absence of an order or direction of the board, the plaintiff had no authority to publish it for and in behalf of the county, and no *legal* claim against the county for so doing. But in 1885 the legislature passed chapter 228 of the Special Laws of that year, which, after reciting the facts as to the publica-

tion, enacted "that the said publication of the said statement is hereby legalized and declared to be the lawful publication of the financial statement of the county of Morrison for the year ending February 29, 1884; and the board of commissioners for the county of Morrison are hereby authorized and required to appropriate sufficient funds from the treasury of said county, not otherwise appropriated, to pay for said publication, at rates not exceeding the maximum rate now allowed by law in publications of like character."

Upon the foundation of this act the present action is brought against the county to recover compensation for the publication; the complaint alleging due presentation of an itemized bill therefor to the board, and their rejection of it. All objections to the bringing of this action as a proper *mode* in which to seek recovery are expressly waived, though that mode is not to be understood as receiving our sanction, and the single question presented is whether chapter 228 is constitutional. The fact that the publication was made being indisputable and conceded, the effect of that chapter was to submit the *amount* of compensation to be awarded to the plaintiff to the county board in the first instance, with the same right of appeal to the district court, as in other cases of claims against a county. In this respect the case is very like *Ryan* v. *County of Dakota*, 32 Minn. 138, (19 N. W. Rep. 653.) The act is therefore not objectionable as an attempt to confer judicial power upon the commissioners, within the meaning of *Sanborn* v. *County of Rice*, 9 Minn. 258, (273,) or otherwise.

But the principal, and in fact the substantial, question in the case, is whether it was constitutional for the legislature to compel the county to pay the plaintiff *at all* for the publication mentioned. If the payment would be a pure gratuity,—a taking of the money of the county and *giving* it to a private person,—the act could not be upheld. *State* v. *Foley*, 30 Minn. 350, (15 N. W. Rep. 375.) But if, on the part of the county, there was any obligation or duty, moral or equitable, (using these words in a large and popular sense,) to pay plaintiff for the publication, then the act is supported by the great weight of authority, and, in our judgment, by good sense and sound public policy. *Coles* v. *County of Washington*, 35 Minn. 124, (27 N. W. Rep. 497;) *Town of Guilford* v. *Supervisors Chenango Co.*, 13 N.

Y. 143; *U. S.* v. *Railroad Co.*, 17 Wall. 322, 332; *Weismer* v. *Village of Douglas*, 64 N. Y. 91; *New Orleans* v. *Clark*, 95 U. S. 644; *People* v. *Ashbury*, 46 Cal. 523; *Creighton* v. *San Francisco*, 42 Cal. 446; Cooley, Const. Lim. *230; 1 Dill. Mun. Corp. § 75, (44.)

That the publication of the financial statement was important to the citizens of the county is not only to be assumed from the fact that the statute requires it, but it is apparent in itself. The board having neglected the duty of ordering publication, the plaintiff volunteers, in the emergency, to publish it at his own risk as respects compensation. A publication is thus secured which answers every purpose of one ordered by the board, and, as a result, the citizens of the county receive and enjoy the full benefit of an authorized publication. In their interest, and for their benefit, the plaintiff, in effect, remedies the failure of the board to perform an important public duty. Wherein does the case differ from one in which a private person of his own motion, by an extraordinary expenditure of time and money, saves a county court-house from destruction by fire, or a county bridge or road from injury by a flood? In either case he renders a valuable service to the county, and a service of a character for which, if rendered for him, a fair-minded man would feel and would be, morally and equitably, bound to make compensation; and so, in the case at bar, we think there was a moral and equitable obligation on the part of the county to pay for the important public service rendered by the plaintiff. Not only this, but the service rendered has been legalized by the legislature, and made equivalent to the service required by law, viz., a publication ordered by the commissioners, so that in law, as well as in fact, it stands upon the footing of an *authorized* publication, and the appropriation is of public (county) funds · to pay for a public (county) service. Still further, and finally, if the question as to the existence of the moral and equitable obligation on the part of the county was in doubt,—one as to which there might fairly be a difference of opinion,—the doubt and the difference must be resolved in favor of the action of the legislature; for a law is not to be pronounced unconstitutional upon a doubt, but its unconstitutionality must be clear to justify a court in pronouncing it void.

Judgment affirmed.