LEO ARENS AND ANOTHER v. VILLAGE OF ROGERS.[1,2]

December 4, 1953.

No. 36,056.

[1]Reported in 61 N. W. (2d) 508.
[2]Appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096.

*Stanley D. Kane,* for appellants.

*George Hedlund* and *Hall, Smith & Hedlund,* for respondent.

Briefs filed by *J. A. A. Burnquist,* Attorney General, and *George B. Sjoselius,* Deputy Attorney General, *Orville C. Peterson,* attorney for The League of Minnesota Municipalities, and *Byron W. McCullagh,* attorney for Minnesota Municipal Liquor Stores Association, Inc., as *amici curiae.*

CHRISTIANSON, JUSTICE.

Action was brought by plaintiffs on behalf of themselves and all other taxpayers of the village of Rogers in the Hennepin county district court on December 4, 1951, seeking: (1) A declaratory judgment to the effect that the authorization and establishment of municipal liquor stores in villages and cities of the fourth class,

including the village of Rogers, pursuant to M. S. A. 340.07, subd. 5, and 340.11, subd. 10, is unconstitutional, (2) to prevent the operation of a municipal liquor store by the village of Rogers to the exclusion of plaintiffs or other private interests, (3) an order directing the village of Rogers to commence appropriate action against the past and present members of its village council who voted to establish or continue operation of a municipal liquor store to recover the money illegally spent in operation of the municipal liquor store, and (4) to have it adjudged and decreed illegal for the village of Rogers to operate its municipal liquor store to the exclusion of plaintiffs or other private interests without first purchasing, as prescribed by § 340.11, subd. 16, the stock, equipment, and other tangible personal property owned and formerly used by plaintiffs in their respective private liquor establishments.

Defendant, Village of Rogers, moved for summary judgment under Rule 56.02 of the Rules of Civil Procedure. The motion was granted, and plaintiffs appeal from the judgment entered pursuant to the district court's order granting defendant summary judgment.

Plaintiffs are citizens, taxpayers, residents, and freeholders of the village of Rogers, Hennepin county, Minnesota. For many years prior to June 30, 1950, they had been licensed by the village of Rogers to sell intoxicating liquor both "on sale" and "off sale" in that village. During this period plaintiffs operated orderly liquor establishments and at no time committed any violation of existing liquor laws. On July 1, 1950, one day following the expiration of plaintiffs' licenses, defendant, by the authority granted in §§ 340.07, subd. 5, and 340.11, subd. 10, commenced operation of an on- and off-sale municipal liquor store. Since that date the municipal liquor store has been the sole and exclusive liquor store in the village of Rogers.[3] Plaintiffs alleged in their complaint that for the period from July 1, 1950, to December 31, 1950, the municipal liquor store operated at a loss, the amount of such loss being

---

[3] M. S. A. 340.13 provides, *inter alia*, that no liquor license for private retail operation shall be issued in any municipality maintaining an exclusive municipal liquor store.

substantially in excess of the $1,257.39 shown by the village of Rogers' own records. The complaint further alleged that the operating loss from January 1, 1951, to December 31, 1951, would be in excess of $5,000. Defendant by its answer admitted that its municipal liquor store operated at a loss for the period from July 1, 1950, to December 31, 1951, but it neither accepted plaintiffs' claim as to the amount of such losses nor made its own showing in this regard. Plaintiffs further alleged that, since no trunk highway runs through the village of Rogers, it is not a suitable location for a municipal liquor store and that any such store would operate at a loss to plaintiffs and other taxpayers. Since the establishment of the municipal liquor store, the village of Rogers has purchased a part of the stock of plaintiff Leo Arens for $3,000 but has failed and refused to purchase the other stock, equipment, and personal property owned and used by plaintiffs in their respective liquor stores in the village of Rogers prior to the commencement of operations at the municipal liquor store.

The case presented to us on appeal is a composite of two separate causes of action. One is essentially a taxpayers' class action seeking a declaratory judgment under the uniform declaratory judgments act, M. S. A. c. 555, as to the constitutionality of §§ 340.07, subd. 5, and 340.11, subd. 10. The other is an action by plaintiffs as taxpayers and former liquor licensees in the village of Rogers seeking to prevent the operation of the municipal liquor store in the village of Rogers and to have it decreed, in any event, that operation of the exclusive municipal liquor store without compliance with § 340.11, subd. 16, is illegal. Four main issues are raised for our consideration on appeal.

(1) Do plaintiffs have a sufficient legal standing to obtain a declaratory judgment regarding the constitutionality of §§ 340.07, subd. 5, and 340.11, subd. 10?

(2) Are §§ 340.07, subd. 5, and 340.11, subd. 10, invalid as special legislation prohibited by Minn. Const. art. 4, § 33?

(3) Did the establishment of defendant's exclusive municipal liquor store deprive plaintiffs of their liberty and property without

due process of law in violation of U. S. Const. Amend. XIV, and Minn. Const. art. 1, § 7?

(4) Is § 340.11, subd. 16, which requires municipalities establishing municipal liquor stores to purchase the stock, equipment, and other tangible personal property of private liquor establishments thereby divested of their business, constitutional?

While it appears from the memorandum of the trial court that other substantive and procedural questions were raised on the motion for summary judgment, only the foregoing questions need be considered in view of our disposition of the appeal.

■ The first question presented is whether plaintiffs have legal standing to obtain a declaratory judgment regarding the constitutionality of §§ 340.07, subd. 5, and 340.11, subd. 10. Defendant correctly points out in its brief that one seeking a declaratory judgment regarding the constitutionality of a state statute must have a direct interest in the validity of that statute which is different in character from the interest of the citizenry in general. From this premise it argues (1) that being mere citizens, taxpayers, residents, and freeholders does not give to plaintiffs a sufficient interest, citing State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544, and (2) that a legal standing is not present by reason of their being the former holders of the last private liquor licenses issued in the village of Rogers because liquor licensees have no vested right to renewal of their licenses and their status upon expiration of their licenses is indistinguishable from that of the public in general, citing Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227.

The trial court, after considering the above arguments, concluded that this was a proper case for a declaratory judgment on the grounds that taxpayers as a class have an interest in such a proceeding as this, particularly where, as here, it is admitted that the operation of the municipal liquor store resulted in a financial loss to the community.

The undoubted rule in this state is that a justiciable controversy must exist before the courts have jurisdiction to render a declara-

tory judgment regarding the constitutionality of a statute. Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; State ex rel. Smith v. Haveland, *supra;* County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92. As this court stated in the Smith case (223 Minn. 92, 25 N. W. [2d] 477):

"Among the essentials necessary to the raising of a justiciable controversy is the existence of a genuine conflict in the tangible interests of the opposing litigants. Complainant must prove his possession of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right in jeopardy. Although complainant need not necessarily possess a cause of action (as that term is ordinarily used) as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner."

Whether a taxpayer has a sufficient legal interest to entitle him to standing under the uniform declaratory judgments act (M. S. A. c. 555) to contest the constitutionality of legislative enactments has been considered previously by this and other courts. In Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263, this court held that a taxpayer could challenge, in proceedings for declaratory judgment, the constitutionality of a statute allowing cities of the first class with a population of 450,000 or over to levy an additional annual tax not exceeding five mills upon all the taxable property within the city to provide for medical facilities and care. In Almquist v. City of Biwabik, 224 Minn. 503, 505, 28 N. W. (2d) 744, 745, this court, in holding that a town taxpayer could contest the validity of a section of a city home rule charter providing that the town assessor assess city property and that he be paid therefor out of town funds, stated:

"* * * The illegal diversion of funds raised by taxation to which the taxpayer has contributed gives rise to a justiciable controversy which may be determined by a declaratory judgment."

In Regan v. Babcock, 188 Minn. 192, 247 N. W. 12, this court held that payment of auto license fees and the state gas tax gave the taxpayers a substantial interest in the honest expenditure of the funds into which their taxes were paid so as to permit a taxpayer's suit to have paving and grading contracts declared void. Likewise, it has been generally recognized that a taxpayer has sufficient interest to enjoin illegal expenditures of both municipal and state funds. Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814; see, Oehler v. City of St. Paul, 174 Minn. 410, 417, 418, 219 N. W. 760, 763. See, also, 11 Minn. L. Rev. 278. While none of the latter cases involved actions under the uniform declaratory judgments act, they are illustrative of the attitude which has prevailed in this court concerning the interest of a taxpayer in the illegal expenditure of his tax dollar.

The right of a taxpayer to obtain a declaratory judgment with respect to the constitutionality of a statute providing for the levy of taxes or expenditure of public money has been generally recognized in other jurisdictions. Ethington v. Wright, 66 Ariz. 382, 189 P. (2d) 209; see, Danforth v. City of Yankton, 71 S. D. 406, 413, 25 N. W. (2d) 50, 54. See, also, Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota,* 37 Minn. L. Rev. 1, 28.

We are of the opinion that the trial court properly concluded that plaintiffs' interest as taxpayers is sufficient to enable them to litigate the constitutionality of §§ 340.11, subd. 10, and 340.07, subd. 5, in the present action. Taxpayers have a real and definite interest in preventing an illegal expenditure of tax money by a municipality. This is particularly true where, as here, the project being financed is a money-losing venture which will likely have the effect of increasing the over-all tax burden of the community. While this means of increasing municipal taxes is not as direct as where an ordinance or statute expressly calls for an additional levy of taxes, the effect is nevertheless as real. The case of State ex rel. Smith v. Haveland, *supra,* upon which defendant places particular reliance, is clearly distinguishable from the instant case. There the

taxpayer's interest in having a statute exempting all moneys and credits from taxation declared unconstitutional was not a protectible legal interest which was about to be jeopardized but was merely an academic interest in whether or not the particular tax exemption was constitutionally feasible.

In view of our opinion that plaintiffs may test the constitutionality of §§ 340.07, subd. 5, and 340.11, subd. 10, as taxpayers in the present action, it becomes unnecessary to consider defendant's further argument with respect to this point.

■ The next question to be considered is whether §§ 340.07, subd. 5, and 340.11, subd. 10, are unconstitutional by reason of the prohibition against special legislation contained in Minn. Const. art. 4, § 33.[4] Section 340.07, subd. 5, states:

" 'Exclusive liquor store' is an establishment used exclusively for the sale of intoxicating liquor, cigars, cigarettes, all forms of tobacco, non-intoxicating malt beverages and soft drinks at retail, either on sale or off sale, or both; provided, that lunches may be sold in a liquor store located in a village containing less than 500 inhabitants and situated in any county having a population according to the last federal census of not less than 34,000, nor more than 35,000, and having not less than 24, nor more than 25, full and fractional townships. It shall be under control of an individual owner or manager and, *if located in municipalities other than cities of the first class, second, and third class, it may be owned and operated by the municipality as the governing body thereof shall direct.*" (Italics supplied.)

Section 340.11, subd. 10, provides:

" 'On sale' licenses may be issued for the sale of intoxicating liquors in hotels, clubs, restaurants and establishments for the sale

---

[4]"In all cases when a general law can be made applicable, no special law shall be enacted; * * *. The legislature shall pass no local or special law regulating the affairs of * * * any county, city, village, * * *. *Provided, however,* That the inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated."

of 'On sale' liquors exclusively in cities of the first, second, and third class and villages of over 10,000 inhabitants, and in cities of the fourth class where such cities have a population in excess of 3,000 persons and are adjacent to cities of the third class. *Such licenses may be issued in cities of the fourth class, and other villages and boroughs for such sale of intoxicating liquor in hotels, clubs or exclusive liquor stores, which exclusive liquor stores the governing body of such municipalities may establish or permit to be established for dispensation of liquor either 'On sale' or 'Off sale,' or both.* In cities and villages having over 5,000, and not more than 10,000, population the municipality may license 'On sale' in restaurants in lieu of the establishment of exclusive liquor stores." (Italics supplied.)

The precise question plaintiffs raise is the constitutionality of the action of the legislature in limiting the authority to establish municipal liquor stores to cities, villages, and boroughs of not over 10,000 population. Although plaintiffs do not question the power of the legislature to adopt a classification of municipalities based on population, it is their contention that the division of municipalities on the basis of whether they have a population of over or under 10,000 is arbitrary and unreasonable when used in a law authorizing the establishment of municipal liquor stores.

Despite the limitations on special legislation contained in Minn. Const. art. 4, § 33, the legislature is not prohibited from making certain classifications regarding the subjects upon which its enactments will operate. That the field of liquor control legislation is no exception is amply demonstrated in this court's opinion in George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 10, 34 N. W. (2d) 725, 731, where this court said:

"Conceding that the state has the power to control and regulate the sale of intoxicating liquors, it must also be conceded that in doing so it has the power to make necessary classifications."

Population has been one of the common types of classification employed by our legislature.[5] However, this method of classification, as is the case with all classifications involved in general laws, must meet certain standards in order to escape the constitutional prohibition against special legislation. This court has had frequent occasion to consider in detail the necessary requirements for a classification to be valid. See, Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598; Hamlin v. Ladd, 217 Minn. 249, 14 N. W. (2d) 396. These requirements are well summarized in State ex rel. Youngquist v. Common School Dist. No. 78, 180 Minn. 44, 47, 230 N. W. 115, 116, as follows:

"* * * For the purpose of a general law the legislature may adopt a proper classification of subjects upon which the law shall operate, and a law is general and uniform in its operation if it operates uniformly upon all subjects within a proper class. But the classification cannot be arbitrary or illusive, and must be founded upon a substantial distinction, having reference to the subject matter of the legislation, between the objects or places excluded and those included. The distinction made must suggest the necessity or propriety of different legislation for each of the classes in reference to the subject of the legislation. The classification must be germane or related to the purpose of the law."

An exception to the necessity of compliance with these requirements is contained in Minn. Const. art. 4, § 36.[6] Defendant con-

---

[5] *E. g.*, Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263; Malmberg v. County of Hennepin, 156 Minn. 389, 194 N. W. 765; see, Dawley, *Special Legislation and Municipal Home Rule in Minnesota: Recent Developments,* 16 Minn. L. Rev. 659, 663.

[6] "* * * The legislature may provide general laws relating to affairs of cities, the application of which may be limited to cities of over fifty thousand inhabitants, or to cities of fifty and not less than twenty thousand inhabitants, or to cities of twenty and not less than ten thousand inhabitants, or to cities of ten thousand inhabitants or less, which shall apply equally to all such cities of either class, and which shall be paramount while in force to the provisions relating to the same matter included in the local charter herein provided for."

tends that the classification in question comes within the fourth group, "cities of ten thousand inhabitants or less," provided for in art. 4, § 36. If this were the case, the classification would be automatically constitutional and no inquiry would be necessary regarding the reasonableness of the classification contained in §§ 340.07, subd. 5, and 340.11, subd. 10, nor its relation to the purpose of those statutes. It is our opinion, however, that art. 4, § 36, has no application to the classification in question because the groupings in art. 4, § 36, apply only to *cities*, whereas the classification in §§ 340.07, subd. 5, and 340.11, subd. 10, groups cities of 10,000 and under population together with villages and boroughs of that same population.

Although it is for the courts to determine whether a particular classification is germane or relevant to the purpose of a statute, of necessity this is a field where the legislature is left a large area of discretion. As stated in State ex rel. Anderson v. Sullivan, 72 Minn. 126, 132, 75 N. W. 8, 9:

"* * * The subject of classification by population is so largely a matter of policy, and the considerations which enter into it are so numerous and complex, that the legislature must necessarily be allowed a large discretion in the matter; and the courts ought not to hold a statute invalid or special legislation unless it appears very clearly that the basis of classification adopted is purely arbitrary."

More recently in Eldred v. Div. of Employment and Security, 209 Minn. 58, 63, 295 N. W. 412, 415, this court said:

"* * * 'The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility.' "

The increasing tendency in recent years to uphold classifications arrived at by the legislature and the underlying reasons for this development are well summarized in 3 Dunnell, Dig. (3 ed.) § 1678, as follows:

"* * * There has been a marked change in recent years in the attitude of the courts upon the question of proper classification for

purposes of legislation. The present tendency is to leave the matter largely to the discretion of the legislature. This change is due to the greatly increased complexity of social and economic facts of modern times, calling for more complex and specific legislation. * * * When a classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, * * *."

Moreover, every presumption is in favor of the constitutionality of a regularly enacted statute. State ex rel. Bd. of Education v. Brown, 97 Minn. 402, 405, 106 N. W. 477, 478, 5 L.R.A.(N.S.) 327.

In light of the foregoing considerations, our task in the instant case is to review the possible factors which likely could have motivated the legislature in drawing a line of demarcation between municipalities of under and over 10,000 population regarding the authority to set up a municipal liquor store. Plaintiffs, in support of their claims of unconstitutionality, set forth what they term the four reasons most commonly advanced in support of municipal liquor dispensaries; namely, (1) simplification of the policing problem, (2) reduction of liquor consumption by elimination of the profit incentive, (3) minimization of the danger of political corruption, and (4) providing an additional source of municipal revenue. It is then argued that all these reasons apply with at least equal, if not greater force to justify the establishment of municipal liquor stores in cities and villages of over 10,000 population as in cities and villages of under 10,000 population. Assuming without deciding that plaintiffs' argument is true, it does not necessarily follow that the classification here was arbitrary and thus unconstitutional. Our task is not to appraise the desirability of what the legislature has done nor to decide what classification, if any, is the best, but is rather to determine whether there is any reasonable basis or justification for the classification adopted by the legislature. We are of the opinion that such a basis exists here. The legislature might reasonably have determined that facilities of the larger municipalities for policing private liquor establishments were

likely to be more adequate than those of the smaller communities. As we recently stated in Cleveland v. County of Rice, 238 Minn. 180, 186, 56 N. W. (2d) 641, 645:

"* * * In the case of liquor regulations, classification of areas on the basis of the amount of police supervision in the areas is common."

Furthermore, the legislature might also have concluded that municipal ownership is more feasible where the number of outlets is small and that, therefore, the privilege should not be extended to the large cities where many establishments would have to be operated. The legislature is not bound to cure all evil at once but rather may deal with it where it is practical to do so. Eldred v. Div. of Employment and Security, 209 Minn. 58, 295 N. W. 412.

We have been referred by the briefs of the parties and *amici curiae* to various Minnesota cases involving classification by population. They are, however, of very limited value in determining whether the particular classification in §§ 340.07, subd. 5, and 340.11, subd. 10, is constitutional, for each case in this area of the law must be determined on its own facts with respect to whether the classification is germane to the purpose of the law. Plaintiffs cite as controlling State ex rel. Paff v. Kelley, 235 Minn. 350, 50 N. W. (2d) 703, where a classification was found unreasonable and not germane which provided that the number of on sale liquor licenses shall be determined by the governing body in cities of the fourth class situated in a county having 100 to 110 townships and a population between 13,000 to 15,000. This case is clearly distinguishable on its facts and by the added element that only one city in the state conformed to such a classification.

■ Plaintiffs further contend that the refusal of the village of Rogers to renew their liquor licenses in order to establish a municipal liquor store deprived them of their liberty and property without due process of law in violation of U. S. Const. Amend. XIV and Minn. Const. art. 1, § 7.

The prevailing and sound view today is that the establishment of municipal liquor stores is a proper exercise of the police power

of the state.[7] This court, although never before concerned with the precise question of whether municipal liquor stores are constitutional by reason of the police power, has previously discussed the constitutional theory underlying the establishment of publicly owned dispensaries. In Stabs v. City of Tower, 229 Minn. 552, 559, 40 N. W. (2d) 362, 368, this court said:

"* * * Publicly owned liquor establishments are governmental agencies established in the exercise of the police power to accomplish governmental purposes. * * *

"That public ownership and operation of liquor establishments such as a municipal liquor store differs essentially from regulation of the liquor traffic by the licensing system is confirmed by the avowed purposes and objects of such publicly owned and operated liquor stores. To begin with, it is said that publicly owned and operated liquor dispensaries (this applies to municipal liquor stores) are the outgrowth of dissatisfaction with the licensing system. * * * The intention is not only to depart from the licensing system, but to substitute an entirely different one for it. The thought is that government can more effectively control and regulate what it owns and operates than something which is privately owned and operated. * * * The regulation deemed necessary is to be achieved through ownership and operation rather than by policing."

See, also, Hahn v. City of Ortonville, 238 Minn. 428, 435, 57 N. W. (2d) 254, 260; 3 Dunnell, Supp. § 4918a.

While plaintiffs do not quarrel with the unquestioned power of defendant to establish a municipal liquor store pursuant to the police power as a method of regulating the liquor business, it is their position that the village of Rogers established the municipal liquor store in question solely for revenue purposes. This they

[7]State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A. L. R. 283; Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840; City of Pierre v. Siewert, 63 S. D. 485, 261 N. W. 42; 30 Am. Jur., Intoxicating Liquors, § 218. Contra, McCullough v. Brown, 41 S. C. 220, 19 S. E. 458, 23 L. R. A. 410.

contend is not a reasonable justification for putting a person out of business and is violative of the due process clauses of both the state and federal constitutions. Thus they argue that the trial court erred in granting defendant summary judgment because they should be allowed at trial to produce evidence of the revenue-seeking motives of defendant's village council in authorizing the municipal liquor store. However, in view of the well-established rule that the motives of a legislative body in enacting any particular legislation are not the proper subject for judicial inquiry, their position, in our opinion, is untenable. In holding that it was improper in an action contesting the legality of an ordinance imposing an annual license fee of $200 upon a motion picture theatre to receive in evidence the admissions of individual members of the village council to the effect that the motive for enacting the ordinance was to obtain funds for a depleted village treasury, this court in Higgins v. Lacroix, 119 Minn. 145, 148, 137 N. W. 417, 41 L.R.A.(N.S.) 737, said:

"* * * Legislative acts would rest on insecure ground, indeed, if admissions of the individual legislators that the attainment of a nonpermissible or unlawful end was the motive and purpose in enacting a law are to be received in evidence and be considered by the courts when called to pass on their validity. Discussions of lawmaking bodies when considering and enacting a law may, when the language is obscure and doubtful, be considered by the courts for the purpose of arriving at the true intent and meaning of the act, but manifestly it ought to be beyond the power of one who has been intrusted with authority to enact a law to impeach the same by any subsequent statement of secret or avowed motives entertained at the time of its passage that would work its invalidity. 28 Cyc. 375, 376.

"In Soon Hing v. Crowley, 113 U. S. 703, 710, 5 Sup. Ct. 730, 28 L. ed. 1145, it is said:

" 'The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on

the face of the acts, or inferable from their operation considered with reference to the condition of the country and existing legislation.' An exception to this general rule may be found where an act or ordinance relates to a private contract and was passed to defraud. We conceive that the general rule just stated applies to ordinances of a municipality when they relate solely to the good order and government of the same. State v. City of Lake City, 25 Minn. 404."

This principle has more recently been reaffirmed by this court in Oscar P. Gustafson Co. v. City of Minneapolis, 231 Minn. 271, 276, 42 N. W. (2d) 809, 812. Hence, since evidence to show the council's motives would be improper, the allegation in plaintiffs' complaint concerning the council's motives could be given no weight in determining defendant's motion for summary judgment.

Even if the motives of defendant's village council could be questioned and it could be shown that the sole reason for establishing the municipal liquor store in the village of Rogers was for revenue purposes, it is very doubtful whether liquor licensees whose licenses have lapsed at the time of the establishment of the municipal liquor store are deprived of any property without due process of law, for, as this court has frequently stated, no person has a vested property right to engage in or continue to engage in the liquor business. George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 10, 34 N. W. (2d) 725, 730; Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227.

■ The last question presented involves the constitutionality of § 340.11, subd. 16, which provides as follows:

*"No municipality shall engage in the sale of intoxicating liquors to the exclusion of private interests without first purchasing the stock, equipment and other tangible personal property of such private liquor establishments and reimbursing the private owner or owners for the property thereby divested or rendered unproductive therein by the act of such municipality in the creation of said municipal liquor store; provided, that this subdivision shall not alter the act of any municipality in the past nor shall the same be*

retroactive as to property rights heretofore divested or rendered unproductive by any act of any municipality in the creation of a municipal liquor store prior to the passage of Laws 1945, Chapter 417. In the event that no agreement can be reached between said interested parties as to the value of the stock, equipment, and tangible personal property affected by said act of such municipality or other governing body, then, and in that event, the same shall be submitted to arbitration in accordance with the provisions of Minnesota Statutes 1941, Chapter 572." (Italics supplied.)

The trial court, as evidenced by its findings of fact, conclusions of law, and order for judgment and its memorandum made a part thereof, specifically determined that this subdivision of the statute was unconstitutional. It was of the opinion that the italicized portion thereof violated Minn. Const. art. 9, § 1, which provides that "Taxes * * * shall be levied and collected for public purposes, * * *." The trial court reasoned that public funds expended for the purchase of the stock, equipment, and other tangible assets of private liquor dealers divested of their business by the establishment of a municipal liquor store are not expended for a public purpose and that, since the moneys required to finance such expenditures would have to be raised by taxes levied against the property of the residents of the municipality, § 340.11, subd. 16, violated Minn. Const. art. 9, § 1, and was, therefore, unconstitutional.

Defendant asserts the position adopted by the trial court. The question thus presented is whether the expenditures required by § 340.11, subd. 16, are for a public purpose. If they are not, subd. 16 must be declared void and unenforceable.

It is well settled that the legislature cannot authorize or require the expenditure of public funds by a municipal subdivision of the state for any purpose not essentially of a public nature. Castner v. City of Minneapolis, 92 Minn. 84, 99 N. W. 361, 1 Ann. Cas. 934. Whether a given expenditure is for a public purpose may be determined by the courts. Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814; Burns v. Essling, 156 Minn. 171, 194 N. W. 404; Castner v. City of Minneapolis, *supra.* An expenditure is illegal if

the primary object is to promote a private purpose although incidentally some public purpose will also be served. Behrens v. City of Minneapolis, *supra;* Burns v. Essling, *supra;* 4 Dunnell, Dig. & Supp. § 6585b.

No doubt the required purchase of stock, equipment, and other tangible personal property prescribed by § 340.11, subd. 16, will benefit certain private liquor dealers who no longer can continue in business after the municipality has decided to go into that field. There is also reason to believe, as plaintiffs suggest, that a public purpose may be served by lessening resistance and resentment against the establishment of a municipal liquor store in a given municipality and by forcing the voters and elected officials thereof to be more responsible in their determination of whether or not to establish a municipal liquor store. It is, however, manifestly clear that the primary purpose of subd. 16 is to compensate the private liquor dealers who are put out of business rather than to benefit the public as a whole. It may be advanced that the stock and equipment purchased from the private liquor dealers can be put to good public use in the proposed municipal liquor store and that, therefore, the expenditures pursuant thereto are for a public purpose. This argument, however, ignores the fact that by § 340.11, subd. 16, the municipality is required to buy all the stock, equipment, and other tangible personal property of such private liquor establishments irrespective of whether the municipality has any need for their use or not.

Plaintiffs argue that, aside from the traditional benefit-to-the-public concept of public purpose, the courts have recognized that a public purpose may be served by satisfying a moral obligation owed to private individuals. In our opinion, if it is possible to justify the expenditures provided for in § 340.11, subd. 16, it must be on this basis. This court has frequently stated that the legislature may satisfy an obligation which is not legally binding but which, nevertheless, has a basis in justice and equity.[8] The typical

---

[8] White v. State, 215 Minn. 609, 614, 11 N. W. (2d) 151, 154; State ex rel. Wharton v. Babcock, 181 Minn. 409, 232 N. W. 718; Fuller v. County of Morrison, 36 Minn. 309, 30 N. W. 824.

404

situations in which courts have found a moral obligation are where labor or materials have been furnished to, or utilized for the benefit of, the state or municipality without compensation;[9] where someone has been injured through the act or negligence of a public officer; or where states have authorized soldier bonuses or fireman benefits.[10] No moral obligation, however, was found to justify the reimbursement of a defeated alderman for expenses incurred in an election recount in Castner v. City of Minneapolis, *supra,* or to justify the payment of bounties to sugar beet manufacturers who relied on an unconstitutional statute in Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N. W. 454. We have neither found nor been referred to any case which recognizes a moral obligation in a situation such as that presented here.

Plaintiffs cite the cases of Earle v. Commonwealth, 180 Mass. 579, 63 N. E. 10, 57 L. R. A. 292, and Joslin Mfg. Co. v. City of Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. ed. 1167, as controlling on this point. In the Earle case a practicing physician's business was damaged by the fact that the city took over certain lands and buildings under the power of eminent domain. Included in the acquisition was the building in which the doctor maintained his office. The court allowed compensation for the damage to the doctor's business on the theory that the legislature is not forbidden from being just even though the form of property damaged was not the kind for which compensation could be required under the power of eminent domain. In the Joslin Mfg. Co. case, a Rhode Island statute authorizing the city of Providence to obtain a pure water supply included a provision that the city could condemn land under eminent domain and compensate owners for damage to their business and also enable the business to move to other New England states without cost. Under an attack of deprivation of due process and denial of the equal protection of the laws, the supreme court upheld the statute on grounds that the legislature can extend the

[9]Fuller v. County of Morrison, *supra;* City of Minneapolis v. Janney, 86 Minn. 111, 90 N. W. 312. The additional element of reliance on proposed municipal action was present in the Janney case.

[10]See, Annotation, 172 A. L. R. 1407, and, also, 18 Minn. L. Rev. 360.

principle of just compensation to an extent consistent with equity and justice.

Both of these cases, however, are distinguishable from the situation presented here. In both cases compensation was granted in recognition of the harm resulting to a business which had every right to continue operating and serving the public at the time of the injury. A private liquor dealer, on the other hand, has no vested right to continue selling intoxicating liquor. George Benz Sons, Inc. v. Ericson, *supra;* Paron v. City of Shakopee, *supra.* As Mr. Justice Field said in Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 15, 34 L. ed. 620, 624:

"* * * There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority."

In Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538, and State v. Hosmer, 144 Minn. 342, 175 N. W. 683, this court expressed views in full accord with those stated in the Crowley case. What we recently said in Cleveland v. County of Rice, 238 Minn. 180, 185, 56 N. W. (2d) 641, 644, with reference to the sale of nonintoxicating malt liquors is equally applicable to the sale of intoxicating liquors:

"* * * The sale of nonintoxicating malt liquors has always been subject to public control. The license to sell such beverages is not a property right but is in the nature of a privilege, and, as such, subject to reasonable regulations. * * * The disadvantage of most 'privileges' is that to obtain them one must give up certain 'rights.'"

The cases which have upheld the right of the legislature to recognize a moral obligation in compensating the owners of animals destroyed by the authority of the police power as a health measure

are not in point.[11] In those cases compensation was made for the destruction of definite and certain private property sacrificed for the greater public interest, whereas any payment to private liquor dealers to lessen the loss caused by the nonrenewal of their liquor licenses is compensation for the termination of an interest or privilege inherently speculative and uncertain as to value and duration.

While bearing in mind that every presumption is in favor of the constitutionality of a regularly enacted statute and the corollary rule which states that any doubt as to the existence of a moral obligation must be resolved in favor of the action of the legislature,[12] it is, nevertheless, our considered opinion that no obligation, legal or moral, is owed to private liquor dealers foreclosed from continuing their business as a result of the establishment of a municipal liquor store. Section 340.11, subd. 16, makes no requirement that a loss be shown before purchase of the items therein specified is required. It can be argued that, in spite of this fact, § 340.11, subd. 16, is not providing compensation in an amount greater than the possible loss to be suffered but is in effect only protecting against any loss which the private liquor dealer might suffer by not being able to sell his obsolete stock, equipment, and other tangible personal property. Nevertheless, it is extremely difficult to rationalize a moral obligation to protect against possible future loss as distinguished from a moral obligation to compensate for a loss already suffered. Although strong and compelling reasons can be advanced for finding a moral obligation to reimburse the ordinary businessman for losses sustained as a result of governmental action, such reasons do not apply with equal weight to a trade as tenuous as the retail hard liquor business in this state. How can there be a moral obligation to compensate a business traditionally unfavored by society which is commenced merely at the will of the sovereign and

[11]Payne v. Jones, 47 S. D. 488, 199 N. W. 472; Kilpatrick v. Compensation Claim Board (Tex. Civ. App.) 259 S. W. 164 (moral obligation owed to persons prevented from planting cotton in certain areas by laws enacted to prevent spread of the pink boll worm).

[12]Fuller v. County of Morrison, 36 Minn. 309, 30 N. W. 824.

subject to its discretion and control throughout the whole of its existence? It is inconceivable to say that any moral obligation would be owed a private liquor licensee whose license was not renewed upon its normal expiration. Yet there is no substantial difference, in our opinion, between such a case and the purchases required by § 340.11, subd. 16.

In view of our conclusion that § 340.11, subd. 16, is unconstitutional, it becomes unnecessary for us to pass upon any of the other questions presented in the briefs at this time.

It follows that the trial court properly granted defendant's motion for summary judgment and that the judgment appealed from should be affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

