**ROCCO ALTOBELLI, INC.,
et al., Petitioners,**

v.

**STATE of Minnesota, DEPARTMENT
OF COMMERCE, Respondent.**

No. C3–94–1024.

Court of Appeals of Minnesota.

Nov. 22, 1994.

Lawrence R. Commers, Michael R. Gray, Susan M. Swift, Tim A. Staum, Mackall, Crounse & Moore, Minneapolis, for petitioners.

Hubert H. Humphrey, III, Atty. Gen., John Garry, Asst. Atty. Gen., St. Paul, for respondent.

Timothy J. Shields, Shields Legal Services, P.A., Hopkins, amicus curiae, for Independent Cosmetologists and Barbers Assoc.

Considered and decided by HARTEN, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Petitioners seek to invoke this court's original jurisdiction pursuant to Minn.Stat. §§ 14.44 and 14.45 (1992) to challenge the validity of Minnesota Rule 2642.0400, subp. 6 (1986) as promulgated by the Minnesota Department of Commerce. Petitioners claim that the rule is invalid because (1) it exceeds the scope of the enabling statute, and (2) it violates the equal protection clauses of the state and federal constitutions. We declare the rule valid.

## FACTS

Minnesota first began to regulate the hair care industry by creating the State Board of Hairdressing and Beauty Culture Examiners (Board) in the 1920's. *See* St.1927, § 5846–27–§ 5846–47, Laws 1927, c. 245, § 21. In 1963, the Board issued the following rule:

> Rented boothspaces in a beauty shop. Persons who rent this space as a booth in a beauty shop, must register same in their own name, pay the prescribed fee and be responsible for the booth and hold a manager-operator license.

4 MCAR § 10.040(I) (1978).

In 1981, the Minnesota legislature amended the statutes governing the regulation of the hair care industry and placed the responsibility of regulation with the Office of Consumer Services of the Department of Commerce (DOC). Act of June 1, 1981, ch. 357, §§ 31–48, 115, 1981 Minn.Laws 1990, 2015–26, 2055.[1] In transferring power from the Board to the DOC, the legislature provided:

> Subdivision 1. **Authorization.** The director, as successor to the board of cosmetology examiners, shall be deemed to be a continuation of the former authority and not a new authority for the purpose of succession to all the rights, powers, duties and obligations of the board of cosmetology examiners * * *

> Subd. 2. **Effect of rules transferred.** All rules heretofore promulgated under the authority of a power, duty, or responsibility transferred * * * to the director shall remain in full force until modified or repealed in accordance with law by the director.

Minn.Stat. § 155A.17 (Supp.1981). The act also provided for the creation of the Minnesota Cosmetology Advisory Council (Council) which was to consist of industry representatives and consumers. Minn.Stat. § 155A.06, subd. 1 (Supp.1981). The act further required the DOC to consult with the Council prior to promulgating any cosmetology rules. *Id.* at subd. 4.

In 1982, the DOC published its first set of proposed rules. After conducting public hearings in St. Paul, Duluth, and Mankato, the DOC adopted the following rule:

> **Booth license.** A Minnesota licensed cosmetologist or manicurist manager may

---

1. The legislature abolished the Office of Consumer Services in 1983, but regulation of the hair care industry remained with the DOC. Act of June 7, 1983, ch. 289, §§ 99–101, 114, 119, 1983 Minn.Laws 1246, 1300–01, 1307–08, 1310.

lease work space from a licensed salon and operate that space as an independent business upon obtaining a booth license. An applicant for a booth license shall meet the following requirements:

A. The applicant shall hold a current Minnesota manager license.

B. The applicant shall provide documentation of leased work space from a licensed Minnesota salon. The work space shall be at least 50 square feet for a cosmetologist or 35 square feet for a manicurist. * * *

C. The applicant shall provide evidence of coverage by professional liability insurance in the amount required for salon licensees. It shall be acceptable for the salon owner's professional liability policy to cover the booth licensee.

D. The applicant shall be responsible for operating his or her work space in full compliance with these rules.

Minn.R. 2640.4100, subp. 7 (1983).

In 1986, the DOC published a set of proposed amendments to the cosmetology rules. Minn.R. 2640.4100, subp. 7 [2] was amended to provide:

**Independent contractor.** A cosmetologist, esthetician, or manicurist, licensed by the state of Minnesota may lease work space from a licensed salon for use as an independent business if the following conditions are met:

A. the lessee shall have a current Minnesota manager's license;

B. the leased work space shall be at least 50 square feet for a cosmetologist or esthetician and 35 square feet for a manicurist;

C. the lessee shall have professional liability insurance in the amount required for salon licenses. It is acceptable for the salon owner's professional liability policy to provide coverage to the lessee;

D. the lessee shall comply with all requirements of this chapter regarding the operation of the leased space as if the space were a salon; and

**2.** Renumbered to 2642.0400, subp. 6 in 1989.

E. the owner and/or manager of the salon from whom the space is leased must confirm that the lessee is in compliance with the requirements of this subpart prior to entering into the lease and at all times during its term.

Minn.R. 2640.4100, subp. 7 (1985).

In the requisite Statements of Need and Reasonableness (SONAR), the DOC explained the elimination of the booth license requirement as follows:

The requirement for booth licenses is being deleted from the cosmetology rules as unnecessary and a regulatory burden. The objective of the cosmetology rules is to assure that cosmetology and related services are performed in a safe manner and under healthy conditions. * * *

The amendment to this subpart, therefore, is designed to recognize a booth licensee's actual status as an independent contractor and limit the requirements of his or her activities in ways which are designed to protect the health and safety of the practitioner's clients but do not impose unnecessary or new bureaucratic administrative requirements.

SONAR at 7. The amendments received the approval of the Council, as well as industry associations including the Minnesota Hairdressers and Cosmetologist Association. SONAR at 1, 2. The DOC adopted the amended rules, which became effective September 8, 1986. 11 Minn.Reg. 389, 392 (1987). The "independent contractor" rule remains in place at present. Minn.R. 2642.0400, subp. 6 (1993).

## ISSUES

1. Do petitioners have standing to invoke this court's jurisdiction under Minn.Stat. §§ 14.44 and 14.45 (1992)?

2. Does Minn.R. 2642.0400, subp. 6 exceed the Department of Commerce's statutory authority?

3. Does the rule violate the equal protection clause of either the Minnesota or the United States Constitution?

## ANALYSIS

### I.

■ The legislature has granted this court "original jurisdiction to determine the validity of an agency's rules, including amendments." *Minnesota Chamber of Commerce v. Minnesota Pollution Control Agency*, 469 N.W.2d 100, 102 (Minn.App.1991) (citing Minn.Stat. § 14.44), *pet. for rev. denied* (Minn. July 24, 1991). This court has described declaratory judgment actions brought under Minn.Stat. § 14.44 as "pre-enforcement" challenges. *Id.* Such actions "question[ ] the process by which the rule was made and the rule's general validity before it is enforced against any particular party." *Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 240 (Minn.1984).

Before this court may address the substance of petitioners' claims, we must determine whether petitioners have standing. *See Minnesota Educ. Ass'n v. Minnesota Board of Educ.*, 499 N.W.2d 846, 849 (Minn.App. 1993). This court may consider the validity of a rule only "when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner." Minn.Stat. § 14.44 (1992); *see also Minnesota Educ. Ass'n*, 499 N.W.2d at 849.

■ The Minnesota Supreme Court has explained the standing requirement in a declaratory judgment action as follows:

> Complainant must prove his possession of a legal interest or right which is capable of and in need of protection. * * * Although complainant need not necessarily possess a cause of action * * * as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or * * * is about to be, affected in a prejudicial manner.

*State ex rel. Smith v. Haveland*, 223 Minn. 89, 92, 25 N.W.2d 474, 477, 174 A.L.R. 544, 547 (1946) (footnote omitted). Petitioners "must have a direct interest in the validity of that [rule] which is different in character from the interest of the citizenry in general." *Arens v. Village of Rogers*, 240 Minn. 386, 390, 61 N.W.2d 508, 512 (1953), *cert. denied*, 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954). The mere possibility of injury in and of itself is insufficient to confer standing. *See Byrd v. Independent School Dist. No. 194*, 495 N.W.2d 226, 231 (Minn.App.1993) ("Because IBEW's 'injury' is speculative, we conclude IBEW lacks standing to pursue its claims."), *pet. for rev. denied* (Minn. Apr. 20, 1993). *See also Sierra Club v. Morton*, 405 U.S. 727, 738, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest * * * is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.' "). Ultimately, "in order to invoke the jurisdiction of the court, [petitioners must] be able to show that the statute is, or is about to be, applied to [their] disadvantage." *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 588 (Minn. 1977).

■ In the present case, petitioners allege that they are injured because chair leasing shops are not subject to the same tax requirements as petitioners' salons. Petitioners claim that the alleged tax benefit to chair leasing shops, in turn, "results in reduced profits and income to [p]etitioners." We discern three problems with the argument raised by petitioners. First, any tax advantage about which petitioners complain is illusory. Those involved in chair leasing operations may, indeed, be exempt from paying into the workers' compensation, Social Security or unemployment compensation systems. Those involved in chair leasing operations, however, are just as surely ineligible to receive the benefits of these systems as those not involved in chair leasing operations. *See* Minn.Stat. § 176.031 (1986) ("The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee."). Thus, for example, if a chair lessee is injured while working on the lessor's premises, the lessee is not entitled to workers' compensation. Similarly, the lessor does not receive the immunity from tort conferred upon those employers who pay into the fund.

Second, even if there might be an identifiable tax benefit to chair leasing shops, it is

not the DOC rule that creates the benefit. The legislature has excluded independent contractors from paying into the workers' compensation fund. Minn.Stat. § 176.041, subd. 1(*l*) (1992). The DOC rule, by labeling chair lessees as "independent contractors" merely follows the workers' compensation rule which states:

A barber is an independent contractor if all the following criteria are substantially met.

A. The barber rents a barber chair from the purported employer for a flat ·sum per week, month, or similar time basis.

B. All payments by customers for services are retained by the barber.

C. The barber furnishes his or her own tools. * * *

D. The purported employer does not have the right to control the means and manner of the barber's performance * * * [and]

E. A written agreement between the parties provides that the barber is an independent contractor.

Minn.R. 5224.0030, subp. 2 (1993). The workers' compensation description of an independent contractor is identical in every respect to that of a chair lessee. The only difference between the rules is that the DOC rule permits the regulation of chair lessees while the workers' compensation rule exempts chair lessees from paying into the workers' compensation fund.[3] Moreover, we note that this court may not be the proper venue in which to bring a workers' compensation or tax claim. *See* Minn.Stat. § 480A.06, subd. 3 (1992) ("The court of appeals shall have jurisdiction to issue writs of certiorari to all agencies, public corporations and public officials, except the tax court and the workers' compensation court of appeals.").

Finally, even if the independent contractor status conferred a benefit upon chair leasing and the status resulted from the DOC rule, petitioners fail to demonstrate either that the rule detrimentally affects their rights or that it injures the public at large. The purpose of the statutes governing cosmetology is to promote the health and safety of the people of Minnesota. Minn.Stat. § 155A.01 (1986). The legislature empowered the Commissioner of the Department of Commerce to make rules which would ensure that practitioners of cosmetology carry out their trade in a safe and healthy manner. Minn.Stat. § 155A.05. Petitioners do not allege that the increased competition brought on by chair leasing has detrimentally affected the quality of cosmetology service to the point that it poses a threat to the public safety. Instead, petitioners claim that the 7500 chair lessees in Minnesota are largely unregulated, and therefore present a danger to the public health.

Petitioners' argument regarding public health is demonstrably incorrect. Because chair leasing must take place in a salon, the practice is subject to the same inspection laws as are non-chair leasing salons. Minn.R. 2642.0400, subp. 6 (1993). Similarly, the rule mandates that a chair lessee must hold a manager's license and comply with all statutory requirements as if the space were a salon. *Id.* The lessee must further lease a specific area and carry, or be covered by, professional liability insurance. *Id.* In short, the very rule about which petitioners complain is the rule that allows the DOC to regulate chair leasing. Petitioners have shown absolutely no connection between their injury and the purpose of the cosmetology statutes: the health and safety of the people of Minnesota.

The sole injury petitioners claim is that the rule reduces their profits. As stated earlier, we do not find the rule to be the source of petitioners' alleged tax detriment. Even if we were to conclude that the rule did provide a tax benefit to chair leasing establishments, the provisions of the rule are available equally to petitioners; petitioners have a right to lease out chairs in their own salons. *See* Minn.R. 2642.0400, subp. 6 (1993). Absent a provision in the rule preventing petitioners from entering the allegedly more profitable chair leasing business, we cannot conclude

---

**3.** As discussed earlier, this exemption is not necessarily an advantage as the chair lessees and lessors are also ineligible to receive the benefits of workers' compensation.

that the rule injures petitioners. We do conclude, therefore, that petitioners lack standing to challenge the validity of Minn.R. 2640.4100, subp.

## II.

▪ If we assume for the sake of further analysis that petitioners have standing to challenge the validity of Minn.R. 2640.4100, subp., we find no merit in their substantive argument that the rule exceeds the scope of the enabling statute. This court may only declare a rule invalid upon a determination that the rule (1) exceeds the statutory authority of the agency; (2) violates constitutional provisions; or (3) was adopted without compliance with statutory rule-making procedures. Minn.Stat. § 14.45 (1992). In declaratory judgment actions, this court has a limited scope of review. *Minnesota–Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 363 (Minn.1979); *see also City of Morton v. Minnesota Pollution Control Agency,* 437 N.W.2d 741, 745–46 (Minn.App. 1989) ("The scope of review in a pre-enforcement challenge to a rule is more restrictive than review of an agency's decision in a contested enforcement proceeding."). This court's review of the rule's validity must be confined to "the record made in the agency proceeding." *Pettersen,* 347 N.W.2d at 241 (footnote omitted).

> [A]n agency's interpretation of the statutes it administers is entitled to deference and should be upheld, absent a finding that it is in conflict with the express purpose of the [a]ct and the intention of the legislature.

*Geo. A. Hormel & Co. v. Asper,* 428 N.W.2d 47, 50 (Minn.1988). In reviewing an agency rule,

> [d]eference is to be shown [to] agency expertise, but the agency must explain on what evidence it is relying and how that evidence connects rationally to the rule involved.

*Minnesota Chamber of Commerce v. Minnesota Pollution Control Agency,* 469 N.W.2d 100, 103 (Minn.App.1991) (quoting G. Beck, L. Bakken, T. Muck, *Minnesota Administrative Procedure* at 417 (1987)), *pet. for rev. denied* (Minn. July 24, 1991).

The stated purpose of the cosmetology laws is to protect

> the health and safety of the people of the state [through] licensing of the practice of cosmetology because of the use of chemicals, apparatus, and other appliances requiring special skills and education.

Minn.Stat. § 155A.01 (1986). Licensing of cosmetologists is controlled by Minn.Stat. § 155A.08, subd. 1 (1986) which provides:

> Any person who offers cosmetology services for compensation in this state shall be *licensed as a salon* if not *employed by another licensed salon.*

(Emphasis added). In order to effectuate this policy, the Minnesota legislature has ordered that the Commissioner of Commerce "shall develop and adopt rules to carry out sections 155A.01 to 155A.18." Minn.Stat. § 155A.05 (1986).

Petitioners argue that in creating the category of "independent contractors," the DOC has formed a class of cosmetologists exclusive of the Minn.Stat. § 155A.08, subd. 1 restriction that cosmetologists either be licensed as a salon or employed by another licensed salon. We disagree for three reasons.

▪ First, petitioners' argument ignores the history of chair leasing in Minnesota. This court "must presume that, in enacting a statute, the legislature acted with full knowledge of prior legislation on the same subject." *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 378 (Minn.1992); *cf. Western Union Telegraph Co. v. Spaeth,* 232 Minn. 128, 132, 44 N.W.2d 440, 442 (1950) ("This court has frequently held that the reenactment of a statute without change, after construction of the statute by the court, presumptively constitutes an adoption of such construction."). In 1981, when the legislature revamped the cosmetology statutes, the Minnesota State Board of Cosmetology had regulated chair leasing for nearly twenty years. 4 MCAR § 10.040(I). Given that the legislature mandated that all rules of the board should remain in force until changed by the DOC (Minn.Stat. § 155A.17 (Supp. 1981)), it appears unlikely that the legislature

intended to preclude the practice of chair leasing.

Second, petitioners raise the same argument before this court that they raised before the Department of Commerce in 1982 and the Minnesota Legislature in 1992. In the 1982 Department of Commerce hearings regarding the proposed rules of cosmetology, Rocco Altobelli and Joe Francis, president of The Barbers, Inc., both "argued that booth leasing is only a method to avoid state and federal taxation and will result in the loss of employment statewide." Report of the Hearing Examiner, OAH No. CONS–83–001–PE, at 12, Jan. 21, 1983. The hearing examiner rejected the salon owner's arguments.[4] *Id.* In 1992, proponents of a ban on chair leasing introduced bills in the Minnesota legislature to outlaw the practice. S.F. No. 2105 and H.F. 2533 (March 5, 1992). Neither bill survived committee. Thus, not only has the Minnesota Legislature implicitly accepted the practice of chair leasing, it has explicitly refused to ban the practice.[5] Absent the legislature's express indication that chair leasing be banned, this court will presume the legislature has ratified the existence of the practice.

Third, this court has rejected an argument similar to petitioners' here when considering the DOC's rules regarding credit unions. *See Minnesota League of Credit Unions v. Department of Com.*, 467 N.W.2d 42, 47 (Minn.App.1991) (interpreting Minn.Stat. § 52.05 (1987)), *aff'd* 486 N.W.2d 399 (Minn. 1992). This court unambiguously stated:

> We do not agree that the listing of three directives precludes respondent from including other matters in the rule. If it did, *there would be no reason to grant respondent any additional rulemaking authority*, as the three items would already have been spelled out by the Legislature and there would be no need for a rule.

*Id.* (emphasis added). The same can be said of this case. If the legislature wished to have exclusive control over licensing, it would not have granted the DOC rule-making authority. In sum, given the traditional deference this court gives to an agency's expertise, the legislature's decision not to act, and the very purpose behind legislative grants of authority to regulatory agencies, we find no merit in petitioners' argument that the rule exceeds the scope of the enabling statute.

### III.

■ Petitioners also argue that Minn.R. 2642.0400, subp. 6 (1986) violates the equal protection clauses of the state and federal constitutions in that it discriminates against petitioners' salons in favor of chair leasing shops. Petitioners allege that although their salons are similarly situated to chair leasing establishments, their salons must pay workers' compensation insurance, Social Security taxes, and withholding taxes, whereas chair leasing shops are exempted from these taxes. Again, we find no merit in petitioners' argument.

■ The equal protection clause of both the federal and state constitutions "requires equality of application of the laws; that all similarly circumstanced be treated alike." *Louisville Gas & Elec. Co. v. Coleman*, 277 U.S. 32, 37, 48 S.Ct. 423, 425, 72 L.Ed. 770 (1928), *cited in Anderson v. City of St. Paul*, 226 Minn. 186, 194, 32 N.W.2d 538, 543 (1948). This court will only sustain an equal protection challenge to a regulation if the distinction between two similarly situated groups is arbitrary and capricious and bears no relation to any legitimate regulatory purpose. *City of St. Paul v. Dalsin*, 245 Minn. 325, 331, 71 N.W.2d 855, 859 (1955). The Minnesota Supreme Court has noted that "in the field of taxation, the legislature's power

---

4. In rejecting the salon owner's argument, the examiner noted:

> The Agency has stated that tax obligations are the responsibility of the income earners, and are immaterial to this booth leasing rule. The Agency notes that booth leasing has been permitted since 1963 and that this rule only sets standards for that practice.
>
> *Id.*

5. Petitioners argued at oral argument that because the Minnesota legislature has not explicitly sanctioned chair leasing, this court must presume that practice is invalid. We cannot agree. Petitioners have the burden of proving the rule invalid. Further, in the states where chair leasing is banned, the practice has been affirmatively disallowed. *See* N.J.Admin.Code tit. 13, § 28–2.7 (1993); 49 Pa.Code § 7.65 (1991).

is inherently broader and its exercise more flexible than in other areas." *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (1980) (citing *Reed v. Bjornson*, 191 Minn. 254, 263, 253 N.W. 102, 106 (1934)).

*Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), considered an argument analogous to petitioners'. The petitioners in *Carmichael* brought an equal protection challenge to an Alabama law which exempted businesses that employed seven or fewer employees from paying an unemployment tax. *Id.* at 505, 57 S.Ct. at 870. In upholding the distinction between employers of seven and eight, the United States Supreme Court first noted:

> Administrative convenience and expense in the collection or measurement of the tax *are alone a sufficient justification* for the difference between the treatment of small incomes or small taxpayers and that meted out to others.

*Id.* at 511, 57 S.Ct. at 873 (citations omitted) (emphasis added). The court then found that such a distinction is within the province of the legislature:

> It would hardly be contended that the state, in order to tax pay rolls, is bound to assume the administrative cost and burden of taxing all employers having a single employee. But if for that or any other reason it may exempt some, whether it should draw the line at one, three, or seven, is peculiarly a question for legislative decision.

*Id.* Similarly, the Minnesota Supreme Court has held:

> The contention that a discrimination between an employer of labor and persons who do not employ labor constitutes a denial of equal protection lacks force, as the courts have frequently upheld statutes which apply only to specified categories of employees.

*State v. International Harvester Co.*, 241 Minn. 367, 373, 63 N.W.2d 547, 552 (1954) (footnote omitted). The state's exemption of independent contractors from certain tax payments is justified by the administrative convenience and expense. Given the United States and Minnesota Supreme Courts' explicit rejection of arguments analogous to petitioners', we also reject petitioners' equal protection argument.

### DECISION

Petitioners do not have standing to invoke this court's original jurisdiction under Minn. Stat. §§ 14.44 and 14.45 in order to challenge Minn.R. 2642.0400. Even if petitioners had standing, the rule neither exceeds the scope of the enabling statute nor violates the equal protection clauses of the Minnesota and United States Constitutions.

**Rule declared valid.**