**MINNESOTA LEAGUE OF CREDIT UNIONS, Petitioner,**

v.

**MINNESOTA DEPARTMENT OF COMMERCE, Respondent.**

No. C7-90-2054.

Court of Appeals of Minnesota.

March 19, 1991.

Cort C. Holten, Chestnut & Brooks, P.A., Minneapolis, for petitioner.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by KALITOWSKI, P.J., and SHORT and POPOVICH,* JJ.

## OPINION

KALITOWSKI, Judge.

This is a petition for a declaratory judgment pursuant to Minn.Stat. §§ 14.44 and 14.45 (1988) to determine the validity of Minn.R. 2675.6400, subpt. 6.B. We find the rule valid.

## FACTS

In 1983, the Legislature amended Minn. Stat. § 52.05 to provide a formalized statutory procedure by which groups too small to support a credit union of their own could be certified to become members of an existing credit union. 1983 Minn.Laws ch. 230, § 2.

In 1987, the Legislature amended Minn. Stat. § 52.05, subd. 2 to require respondent Minnesota Department of Commerce to adopt rules implementing this subdivision. The amendment contained three specific directives as to the contents of the rules:

(1) [F]or the purpose of this subdivision, groups with a potential membership of less than 1,500 will be considered too small to be feasible as a separate credit union, unless there are compelling rea-

sons to the contrary, relevant to the objectives of this subdivision;

(2) groups with a potential membership in excess of 1,500 will be considered in light of all circumstances relevant to the objectives of this subdivision; and

(3) all group applications, except for applications from groups made up of members of existing credit unions or groups made up of people who have a common employer which qualifies them for membership in an existing credit union, will be considered separately from any consideration of the membership provisions of existing credit unions; except that, groups made up of members of an existing credit union may be certified under this subdivision with the agreement of the credit union.

Minn.Stat. § 52.05, subd. 2 (1988).

Respondent proposed a rule and on September 18, 1989, an Administrative Law Judge (ALJ) conducted a public hearing. The proposed rule contained six subparts, including those provisions specifically required to be included by the statute and several additional provisions relating to the implementation of the procedure to determine small group eligibility.

All testimony and submissions focused exclusively on subpart 6.B.

Subpart 6. *Subsequent action by an existing credit union.* For an existing credit union to qualify for approval of a bylaw amendment to include an eligible select group in its field of membership, in addition to the requirements in Minnesota Statutes, section 52.02, the existing credit union must be capable of serving the eligible select group, and the commissioner may require:

\* \* \* \* \* \*

B. a statement that solicitations will not be directed at individuals to join the select group as a condition for membership in the credit union.

14 Minn.Admin.Reg. 151 (1989).

The ALJ found the proposed rule to be defective because the term "may" granted

---

\* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

unbridled discretion to respondent without standards to guide use of that discretion. In order to cure this defect, he held, "the word 'may' must be replaced with the word 'shall' or 'must,' or, in the alternative, the Commissioner must fashion criteria to guide his discretion."

The ALJ also urged respondent to change the language of subpart 6.B to clarify "that what is being prohibited is the solicitation *by the existing credit union,* and not by individual members." (Emphasis in original.) He recommended the language be changed as follows:

> B. a statement that the existing credit union will not solicit individuals to join the select group.

Respondent issued its findings of fact, conclusions and order adopting the proposed rule with the modifications suggested by the ALJ. In December 1989, the chief ALJ found the final proposed rules were not substantially different from those proposed at the public hearing and that respondent had cured the defects in the rule as required. He denied petitioner Minnesota League of Credit Union's request for a rehearing.

### ISSUES

1. Does Minn.R. 2675.6400, subpt. 6.B violate constitutional provisions?

2. Does Minn.R. 2675.6400, subpt. 6.B exceed the statutory authority of the Department of Commerce?

3. Was Minn.R. 2675.6400, subpt. 6.B adopted without compliance with statutory rulemaking procedures?

### ANALYSIS

■ This is a petition pursuant to Minn. Stat. § 14.44 for a declaratory judgment on the validity of Minn.R. 2675.6400, subpt. 6.B.

> In proceedings under section 14.44, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rulemaking procedures.

Minn.Stat. § 14.45. *See Minnesota–Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 363 (Minn.1979). Review is confined to the record made in the agency proceeding. *Manufactured Hous. Inst. v. Pettersen,* 347 N.W.2d 238, 241 (Minn. 1984).

### I.

■ Petitioner argues that subpart 6.B impermissibly regulates speech by a credit union seeking to have a select group admitted to its field of membership. Petitioner contends the rule prohibiting solicitation on its face violates a credit union's constitutionally guaranteed rights of freedom of speech because it infringes on individual speech. *See* U.S. Const. amend. I; Minn. Const. art. I, § 3. We disagree.

The record supports respondent's contention that the rule does not infringe on individual speech. The ALJ found "implicit in the rule, although not explicitly stated, is the idea that the restriction is aimed at the existing credit union as an entity, and not at its individual members." He directed respondent to modify the language of the proposed rule to "make it clear that what is being prohibited is the solicitation *by the existing credit union,* and not by individual members." (Emphasis in original.) The language of the rule is clear that it is the *credit union* which cannot solicit membership.

Petitioner argues that situations might arise when it would be uncertain whether a person soliciting membership was acting as the credit union entity or as an individual and that this might lead to an impermissible application of the rule. However, far reaching scrutiny of a rule or regulation based on hypothetical facts is unnecessary in a pre-enforcement action. *Minnesota–Dakotas Retail Hardware Ass'n,* 279 N.W.2d at 363. In any enforcement proceedings, an individual would have a full opportunity to be heard and to present constitutional arguments against the rule *as applied* to his or her activities. The possibility of "as applied" challenges to the rule does not make the rule unconstitutional on its face.

The speech being regulated is commercial speech by the credit union. Commercial speech is expression which relates to the economic interests of the speaker and its audience. *See State v. Century Camera, Inc.*, 309 N.W.2d 735, 739 (Minn.1981). Commercial speech is entitled to a limited measure of protection, but may be subject to modes of regulation that might be impermissible in the realm of non-commercial expression. *See Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, ——, 109 S.Ct. 3028, 3033–34, 106 L.Ed.2d 388 (1989).

■ The United States Supreme Court has set forth a four-part test to determine the constitutionality of restrictions on commercial speech: (1) whether the commercial speech in question deals with a lawful activity and is not misleading; (2) whether the government interest asserted in support of the restriction is substantial; (3) whether the restriction imposed directly advances the government interest asserted; and (4) whether the restriction goes no further than necessary to serve the governmental interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980).

■ The first part of the test is met because the solicitation which is prohibited is lawful and not misleading. The second part of the test requires an examination of the governmental interest in imposing the restriction. Here the governmental interest is the limitation of membership in credit unions to groups having a common bond of occupation, association or residence. Minn. Stat. § 52.05, subd. 1 (1988). The purpose of the common bond requirement is to assure the credit union's interest will be unified, cohesive, and first in the minds and purposes of the credit union's management. The restriction on solicitation in the rule is intended to minimize the threat to the common bond posed by allowing small select groups to affiliate with credit unions. We find this interest in preserving the common bond to be substantial.

The third part of the test requires that the restriction imposed directly advance the governmental interest asserted. The prohibition on solicitation seeks to prevent the credit union from attempting to create an open field of membership by using an easily joined special group as a conduit into the credit union itself. If the credit union is prohibited from systematically soliciting membership into the special group, it will be prevented from undertaking a planned expansion of the credit union through the special group. This restriction directly advances the respondent's interest.

Under the fourth part of the test, the state must show the restriction on commercial speech goes no further than is necessary to serve the governmental interest asserted in support of the restriction. This has come to be known as the "least-restrictive-means" requirement. In a recent United States Supreme Court decision, the Court held the state need not show the restriction is absolutely the least severe that will achieve the desired end. There need only be a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Fox*, 492 U.S. at ——, 109 S.Ct. at 3035. We find the restriction meets this test.

■ Petitioner also asserts that in prohibiting solicitations, the proposed rule is unconstitutionally vague as to what conduct is proscribed. We disagree. "Solicit" has a reasonably definite plain English meaning. The term implies "personal petition and importunity addressed to a particular individual to do some particular thing." Black's Law Dictionary 1392 (6th ed. 1990). For purposes of this rule, the credit union is prohibited from asking an individual to join the special group whether it be by letter, advertisement or word of mouth. The rule is not unconstitutionally vague.

■ Lastly, petitioner argues the rule is unconstitutionally arbitrary because it treats similar credit unions in a dissimilar manner. The dissimilarity in treatment is alleged because first, credit unions which added select groups before the rule was in effect are not subject to the solicitation restriction, and secondly, because the rule

allows solicitation for membership into the credit union itself and into the common bond group that originally formed the credit union, but does not allow solicitation into the select group. The first argument must fail because most regulatory enactments, whether by the legislature or by an agency, have a disparate impact on those who acted before the effective date of the enactment and those who did not. *See No Power Line, Inc. v. Minnesota Envtl. Quality Council,* 262 N.W.2d 312, 320 (Minn.1977) (discussing "grandfather" clauses). Disparate impact such as this does not make a proposed rule arbitrary.

█ The second argument must also fail. The fact that the rule applies to only one type of solicitation is the result of respondent's attempt to limit the breadth of the rule. The rule on solicitation is not arbitrary. It is narrowly written, using a reasonable and necessary distinction between types of solicitation, so that the rule may have the least possible impact on the credit union's right to solicit business.

## II.

█ This court may declare a rule invalid if the rule exceeds the statutory authority of the agency. Minn.Stat. § 14.45.

The extent of jurisdiction or authority bestowed upon an administrative agency is measured by the statute from which it derives its authority.

*Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984) (citation omitted).

Minn.Stat. § 45.023 (1988) provides:

the commissioner of commerce may adopt, amend, suspend, or repeal rules * * * in accordance with chapter 14, and as otherwise provided by law, whenever necessary or proper in discharging the commissioner's official responsibilities.

These official responsibilities include "constant supervision * * * over the books and affairs of all * * * credit unions * * * doing business within this state." Minn.Stat. § 46.04, subd. 1 (1988). Minn.Stat. § 52.06 (1988) also provides: "[c]redit unions shall be under the supervision of the commissioner of commerce." The authority granted respondent in these sections is very broad. It includes the right to limit commercial speech by a credit union, if it is necessary to discharge the Commissioner of Commerce's responsibilities.

Petitioner argues that when the Legislature amended Minn.Stat. § 52.05, it only granted respondent specific statutory authority to adopt rules covering the three provisions mentioned in the law. Section 52.05, subd. 2 reads: "The commissioner shall adopt rules to implement this subdivision. These rules must provide [three specific directives to the commissioner]." We do not agree that the listing of three directives precludes respondent from including other matters in the rule. If it did, there would be no reason to grant respondent any additional rulemaking authority, as the three items would already have been spelled out by the Legislature and there would be no need for a rule.

## III.

█ The final grounds for invalidating a rule under Minn.Stat. § 14.45 is a finding that the rule was adopted without compliance with statutory rulemaking procedures. Petitioner claims four procedural irregularities: (1) respondent failed to support the proposed rule in its statement of need and reasonableness as required by Minn.R. 1400.0500 (1989); (2) the proposed rule was not shown to be reasonable and necessary; (3) the proposed rule was changed after the hearing procedure; and (4) the ALJ was substantially influenced by an untimely written submission to which petitioner did not have an opportunity to respond.

It is clear from petitioner's oral presentation at the hearing and its accompanying 11–page memorandum that it was aware of respondent's arguments as to the need for and reasonableness of subpart 6.B, regardless of their minimal mention in the statement of need and reasonableness. Further, in a post-hearing submission, petitioner stated it did not believe it was necessary to recess the hearing because of the alleged insufficiency of the statement. Peti-

tioner was not prejudiced by the minimal nature of the statement.

Minn.R. 1400.0800, subpt. 8 (1989) requires that, at the public hearing, the agency shall make an affirmative presentation of facts establishing the need for and reasonableness of the proposed rule. At the hearing, respondent argued at length as to the need for the rule and the reasonableness of the rule. It supported its position with an example of an attempt by a credit union to defeat the common bond by solicitation into a select group affiliated with the credit union. The record reflects respondent fulfilled its obligations to establish the need for and reasonableness of the rule.

Petitioner next argues the rule was substantially changed after the hearing. Two changes were made in the proposed subpart 6.B by respondent prior to adoption of the rule. First, respondent changed the word "may" to the word "shall" in order to limit its own discretion. Secondly, respondent substituted alternative language for subpart 6.B to indicate more clearly that the restriction on solicitation is aimed at the existing credit union as an entity and not at its individual members.

Minn.R. 1400.1100, subpt. 2 provides guidelines for use by the chief ALJ to determine if there has been a substantial change in a final rule.

In determining whether a proposed final rule or rule as adopted is substantially different, the administrative law judge or the chief administrative law judge shall consider the extent to which it affects classes of persons who could not have reasonably been expected to comment on the proposed rules at the rulemaking hearing, or goes to a new subject matter of significant substantive effect, or makes a major substantive change that was not raised by the original notice of hearing in such a way as to invite reaction at the hearing, or results in a rule fundamentally different in effect from that contained in the notice of hearing.

The adopted rule does none of these things. It does not affect classes of persons who could not have reasonably been expected to comment; it still concerns only credit unions and their relationships to special groups. It does not go to new subject matter of significant substantive effect; it still deals only with the solicitation of members into the special group. It does not make a major substantive change that could not have been anticipated at the hearing; the rule was changed in reaction to valid concerns raised at the hearing. It does not result in a rule fundamentally different in effect from that contained in the notice of hearing.

Lastly, petitioner contends the ALJ relied upon an untimely submission in making his decision. The submission in question is an undated two and one-half page typewritten statement on the letterhead of the Minnesota Association of Credit Unions, a trade association whose representative appeared at the rulemaking hearing and testified in support of the rules. There is no stamp indicating date of receipt by the ALJ or the Office of Administrative Hearings.

We note that the ALJ believed the submission to be timely. Further, even if the submission was not timely, because the statement raises no issues which were not discussed at the hearing we find the ALJ's reference to the document did not prejudice petitioner.

## DECISION

We find Minn.R. 2675.6400, subpt. 6.B does not violate constitutional provisions, does not go beyond the statutory authority of the Department of Commerce, and was adopted in compliance with statutory rulemaking procedures.

Rule declared valid.