**MINNESOTA LEAGUE OF CREDIT UNIONS, Petitioner, Appellant,**

v.

**MINNESOTA DEPARTMENT OF COMMERCE, Respondent.**

**No. C7–90–2054.**

Supreme Court of Minnesota.

June 26, 1992.

Cort C. Holten, Chestnut & Brooks, P.A., Minneapolis, for appellant.

Norine Olson–Elm, St. Paul, for respondent.

TOMLJANOVICH, Justice.

Petitioner, Minnesota League of Credit Unions, seeks review of the court of appeals' decision upholding an administrative rule pursuant to Minn.Stat. § 14.45 (1991). The court of appeals held that Minn.R. 2675.6400, subp. 6.B (1991) does not violate credit unions' constitutional right to free-

dom of speech guaranteed by the Minnesota and United States Constitutions, is not overbroad, vague and arbitrary, and was promulgated in compliance with statutory rulemaking procedures. We affirm.

In 1925, the legislature passed the first laws regulating credit unions. *See* 1925 Minn.Laws ch. 206. "A credit union is a cooperative society, incorporated for the twofold purpose of promoting thrift among its members and creating a source of credit for them at legitimate rates of interest for provident purposes." Minn.Stat. § 52.01 (1990). Prior to 1983, any seven residents of the state could petition the commissioner of banks for permission to form a credit union. Minn.Stat. § 52.01 (1982). The legislature limited the membership in credit unions to those sharing "a common bond of occupation, or association, or to residents within a well-defined neighborhood, community, or rural district." Minn.Stat. § 52.05 (1982). In 1983, however, the legislature amended the membership requirements set forth in section 52.05 by adding the following paragraph:

> Any 25 residents of the state representing a group may apply to the commissioner, advising him of the common bond of the group and its number of potential members for a determination whether it is feasible for the group to form a credit union. Upon a determination that it is not feasible to organize because the number of potential members is too small, the applicants will be certified by the commissioner as eligible to petition for membership in an existing credit union *geographically situated to adequately service* the group. If the credit union so petitioned resolves to accept the group into membership, it shall follow the by-law amendment and approval procedure set forth in section 52.02.

1983 Minn.Laws ch. 230, § 2 *codified at* Minn.Stat. § 52.05 (1984) (emphasis added). In 1987, the legislature amended section 52.05 to provide that the existing credit union only needed to be "capable of serving" the select group instead of "geographically situated to adequately service" it. 1987 Minn.Laws ch. 181, § 1 *codified at* Minn.Stat. § 52.05, subd. 2 (1988). These amendments made it possible for a group too small to form its own credit union to join an existing credit union. It is noteworthy that the statute does not require a "common bond" between the existing credit union and the small group; the existing credit union must only be "capable of serving" the small group. The legislature authorized the Commissioner of Commerce (Commissioner) to adopt rules to implement this subdivision within certain parameters.

On April 17, 1989, the Commissioner proposed Rule 2675.6400 to implement the statute. On September 18, 1989, an administrative law judge convened a public hearing on the proposed rule. The proposed rule set out the procedure whereby a "select group," which is a group that has a common bond but is too small to feasibly form its own credit union, could join an existing credit union. Subpart 6.B was the only contested provision of the rule. Subpart 6 of the proposed rule provided:

> [Subsequent action by an existing credit union.] For an existing credit union to qualify for approval of a bylaw amendment to include an eligible select group in its field of membership, in addition to the requirements in Minnesota Statutes, section 52.02, the existing credit union must be capable of serving the eligible select group, and the commissioner *may* require:
>
> A. the existing credit union and representatives of the eligible group to agree on and submit a plan of operation to facilitate servicing of the members of the eligible select group for the commissioner's consideration on a case-by-case basis; and
>
> B. *a statement that solicitations will not be directed at individuals to join the select group as a condition for membership in the credit union.*

(Emphasis added). The administrative law judge found that the solicitation prohibited by subpart 6.B constituted commercial speech. The administrative law judge also found that the provision satisfied the four-part test for determining whether a rule constitutionally regulates commercial speech. *See Central Hudson & Elec.*

*Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *see also Board of Trustees of the State Univ. of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (following *Central Hudson*). The administrative law judge, however, noted that the proposed rule was defective because it granted the Commissioner "unbridled" discretion to impose these requirements on credit unions. To cure this problem, he suggested that the word "may" be replaced with either "must" or "shall," or alternatively, that the Commissioner fashion guidelines for implementing the discretionary standard. Additionally, the administrative law judge recommended that subpart 6.B be clarified to ensure that the rule would not affect individual speech. The proposed change to subpart 6.B provided that the commissioner shall require "a statement that the *existing credit union* will not solicit individuals to join the select group." (Emphasis added).

On October 25, 1989, the chief administrative law judge approved the report and ordered the Department of Commerce (Department) to implement the recommended changes or reconvene the hearing if necessary. The Department complied and adopted the suggested changes. On December 11, 1989, the chief administrative law judge then found the changes were not substantial and that the rules were properly approved. Pursuant to Minn.Stat. § 14.-44, petitioner sought review by the court of appeals of the validity of the rule. Petitioner argued the rule violated constitutional provisions, exceeded the statutory authority of the agency and was adopted without compliance with statutory rulemaking procedures.[1] The court of appeals rejected these arguments, holding the rule was valid. *Minnesota League of Credit Unions v. Minnesota Dep't of Commerce,* 467 N.W.2d 42 (Minn.App.1991). This appeal followed.

## I.

Petitioner argues that the ban on solicitation of individuals to join a "select group" infringes upon its constitutional right of free speech guaranteed by the Minnesota and United States Constitutions. *See* U.S. Const. amend. I; Minn. Const. art. I, § 3. The Department of Commerce counters that the rule is a valid regulation of commercial speech under the Supreme Court's four-part analysis set forth in *Central Hudson* and *Fox.* Consequently, the initial inquiry in this case is whether the rule regulates commercial speech.

In *State v. Century Camera, Inc.,* 309 N.W.2d 735, 739 (Minn.1981), we defined commercial speech as follows:

> Commercial speech is "expression related solely to the economic interests of the speaker and its audience." It includes speech which does "no more than propose a commercial transaction," such as price advertising. We find no abstract definition of commercial speech, but there is a " 'common-sense' distinction between speech proposing a commercial transaction * * * and other varieties of speech."

309 N.W.2d at 739 (citations omitted). There, the court was presented with the question of whether an employer's constitutional right to freedom of speech was violated by Minn.Stat. § 181.75 which prohibited an employer from soliciting or requiring an employee or prospective employee to take a lie-detector examination. The court found that the speech affected by this statutory provision was commercial speech, reasoning that "[a]n employer engaging in the verbal activity of soliciting or requiring these examinations does not have any purpose other than the advancement of his or her business interests." 309 N.W.2d at 740.

Petitioner contends the Department seeks to restrict speech that is "inextricably intertwined with otherwise protected speech." Further, petitioner argues that "the rule as adopted does not differentiate between commercial and individual

---

**1.** Minn.Stat. § 14.45 (1990) provides in relevant part that "the court shall declare the rule invalid if it finds that it violates constitutional provi- sions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rulemaking procedures."

speech." However, the administrative law judge noted in his report:

> Implicit in the rule, although not explicitly stated, is the idea that the restriction is aimed at the existing credit union as an entity, and not at its individual members. As the Department stated in its September 22, 1989 post-hearing submission to the Administrative Law Judge:
>
>> The rule thus has no impact on the right of credit union members to meet with and speak to whomever they please about any subject they please.

Accordingly, the administrative law judge recommended that the Department amend the proposed rule to make it clear that only the existing credit union was prohibited from soliciting membership in the "select group." The Department complied. Therefore, as adopted, the rule allows any individual person, whether an employee of the credit union or not, to solicit individuals to join the select group. The rule also does not prohibit the existing credit union from disseminating information about the goals, values, or importance of the "select group."

We must distinguish, however, between what and who the term "existing credit union" includes. A credit union, like any corporation, cannot act independently; it needs employees or officers to act on its behalf. This, however, does not present a problem since we believe the rule means that individuals, when acting in their capacities as employees, officers or directors, may not solicit others to join the select group. Employees, officers or directors are free to do and say whatever they please on their own time.

Petitioner also argues that the solicitation of individuals to join a "select group" does not "propose a commercial transaction" and is not "solely related to the economic interests" of credit unions. In *Century Camera*, we made clear that we are not bound by any "abstract" definition of commercial speech; rather, we use "common sense" in determining whether a rule

regulated commercial speech as opposed to other protected forms of speech. 309 N.W.2d at 739. We have little difficulty concluding that credit union solicitation of individuals to join a "select group" constitutes commercial speech. Credit unions engaging in this activity are clearly attempting to expand their field of membership which is "solely related to the economic interests" of credit unions.

 Our finding that the rule regulates commercial speech does not end our inquiry. Although afforded less protection than noncommercial speech, the first amendment still safeguards commercial speech. *Id.* (citing *Central Hudson*, 447 U.S. at 561, 100 S.Ct. at 2348). Commercial speech is provided "a limited measure of protection, commensurate with its subordinate position in the scale of first amendment values, * * * allowing modes of regulation that might be impermissible in the realm of noncommercial expression." *Central Hudson*, 447 U.S. at 589, 100 S.Ct. at 2363. In *Central Hudson* and *Fox,* the Supreme Court set forth a four-part analysis for determining whether a law which regulates commercial speech passes constitutional scrutiny. Under these decisions, we must make the following inquiries:

(1) Whether the speech concerns a lawful activity and is not misleading;

(2) Whether there is a substantial governmental interest asserted;

(3) Whether the regulation directly advances the governmental interest; and

(4) Whether there is a "reasonable fit" between the legislature's ends and the means chosen to accomplish it.

*Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351; *Fox,* 492 U.S. at 480, 109 S.Ct. at 3034.[2] There is no dispute that the speech at issue concerns a lawful activity and is not misleading. This speech, therefore, is entitled to first amendment protection. How much protection depends upon the resolution of the final three parts of the *Central Hudson/Fox* analysis.

*Central Hudson,* 447 U.S. at 556, 100 S.Ct. at 2347.

---

**2.** Prior to *Fox,* the Supreme Court required the regulation to be "not more extensive than is necessary to serve [the governmental] interest."

First, we consider whether the Department has asserted a substantial governmental interest. The Department asserts that "the preservation of the cohesiveness and unity of credit unions" is a substantial interest justifying the rule. The Department argues that a credit union could exploit having a "select group" as part of its membership by using it to gain a "wide open" field of membership and thereby attract people who otherwise would not be eligible to join the existing credit union because of the common-bond requirement.

Petitioner argues that the purpose of the rule is not to protect the cohesiveness of a credit union but to afford a small group access to credit unions. The issue before this court is not the purpose of the law enacted by the legislature; rather, it is whether the interest asserted by the Department is a substantial· one. In reviewing the record before us, we believe that preventing a credit union from creating an open field of membership by soliciting individuals to join a "select group" is a substantial governmental interest.

Next, we consider the relationship between the Department's interest and the ban on credit union solicitation of individuals to join a select group. The Department intends to prevent a credit union from using the "select group" as a vehicle for open membership. Although anyone other than the credit union may solicit individuals to join the "select group" and thereby become eligible for membership in the credit union, we believe there is greater abuse inherent in credit union solicitation than individual solicitation. We find that the rule directly advances the governmental interest.

Our final inquiry requires us to determine whether there is a "reasonable fit" between the legislature's ends and the means chosen to accomplish those ends. Here, the rule does not ban all advertising; it seeks only to prohibit speech soliciting membership in a "select group." A credit union can still solicit people who share a common bond with the other members to join the credit union; however, now the credit union must refrain from soliciting membership in a "select group." The credit union can also solicit "select group" members to become members of the credit union. Additionally, the credit union can still express its views on the goals and importance of the "select group." Furthermore, the rule does not impact upon individuals' rights of free speech except in those limited situations where individuals are acting in their capacities as employees, officers or directors. In light of all these factors, .we find there is a reasonable fit.

Petitioner requests the court to depart from the United States Supreme Court's four-part test in *Central Hudson* and *Fox*. Specifically, petitioner argues that, under the Minnesota Constitution, we should require that the least restrictive means be utilized in implementing governmental restrictions of commercial speech. In other words, petitioner is asking the court to reject the "reasonable fit" requirement enunciated in *Fox*. Our examination of Article I, § 3 of the Minnesota Constitution leads us to believe that it may provide greater protection for freedom of speech than the United States Constitution. However, the rights of the parties are adequately protected by application of the United States Supreme Court's four-part test in *Central Hudson* and *Fox*, so we decline to extend the protections afforded by the Minnesota Constitution in this case.

## II.

We next consider petitioner's vagueness challenge.[3] In order to satisfy due process, laws must give fair warning to an individual of the conduct prohibited. More precisely, the vagueness doctrine requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Century Camera*, 309 N.W.2d at 744 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Subpart B, in pertinent part, provides: "[T]he existing

---

**3.** ·In its brief, petitioner casually argues that the rule is overbroad. We note that the overbreadth doctrine, which is normally inapplicable to commercial speech, does not apply to the case at bar. *See Fox*, 492 U.S. at 481, 109 S.Ct. at 3035.

credit union will not solicit individuals to join the select group." The court of appeals focused solely on the term 'solicit' in finding that the rule was not unconstitutionally vague on its face. 467 N.W.2d at 46 (citing Black's Law Dictionary 1392 (6th ed. 1990)). We agree that the term 'solicit' is free from ambiguity.

Petitioner argues not only that the term 'solicit' is vague but that the rule is vague as to whom it affects. Petitioner argues that the rule fails to give any guidance on "when the members are acting as individual members and when they are acting in the capacity of the credit union entity." The court of appeals correctly pointed out that this is a pre-enforcement action and that an individual could challenge the constitutionality of the rule as applied to his or her activities in an enforcement action. *Id.*; see *Minnesota–Dakotas Retail Hardware Ass'n v. State*, 279 N.W.2d 360, 363 (Minn.1979).

■ The Department counters that each individual, whether a member or employee of the credit union, may solicit individuals to become members of the select group; only the credit union must refrain from this activity. This argument is overly simplistic and needs clarification. As petitioner points out, a credit union *is* its members and cannot act in a vacuum; employees or officers must act on behalf of the credit union. The proper construction of the rule is that individuals, in their capacities as employees, officers, or directors, must refrain from soliciting others to join the select group.

Petitioner also argues that the rule is arbitrary because it treats similar credit unions in an unlike manner. Specifically, petitioner notes (1) credit unions which added select groups before passage of subpart 6.B are not subject to the rule; (2) groups added by merger are not subject to the solicitation prohibition; and (3) the prohibition of solicitation is based on characterization.

■ With respect to petitioner's first argument, a law generally can only be applied prospectively. It is a basic principle of statutory construction that a law is not ordinarily applied retroactively unless the legislature expressly declares or clearly and manifestly intends it so. Minn.Stat. § 645.21 (1990); *In re Gardner's Trust,* 266 Minn. 127, 135, 123 N.W.2d 69, 75 (1963). There is bound to be a disparate impact upon those that acted before the promulgation of any administrative rule and those who did not. As the court of appeals noted, this alone should not make the rule unconstitutionally arbitrary.

■ With respect to petitioner's final arguments, subpart 6.B was adopted for the purpose of preventing an aggressive credit union from using the small group as a conduit for creating wide-open membership. No showing has been made that similar problems have arisen in the context of mergers of credit unions. The rule is narrowly drawn to effect this purpose and prevent the possible abuses.

### III.

■ Petitioner's final argument is that the rule was not adopted in compliance with statutory rulemaking procedures. Minn.Stat. § 14.45 (1990) provides that the court must invalidate a rule if it was "adopted without compliance with statutory rulemaking procedures." Petitioner asserts the following four arguments: (1) The Department of Commerce failed to address the contested part of the rule in its Statement of Need and Reasonableness; (2) Subpart 6.B is neither reasonable nor necessary; (3) The rule was substantially changed after the hearing, violating petitioner's due process rights; and (4) The administrative law judge was substantially influenced by memoranda submitted after the record closed, violating petitioner's due process rights.

Minn.R. § 1400.0500 provides in pertinent part that, "[t]he statement of need and reasonableness must contain a summary of all of the evidence and argument which is anticipated to be presented by the agency at the hearing justifying both the need for and the reasonableness of the proposed rules * * * ." The Statement of Need and Reasonableness prepared by the

Department regarding Subpart 6 of the proposed rule concludes with the ambiguous statement: "Further, it would be determined that the procedure is not used to defeat the existing statutory limitations for credit unions' field of membership." It is difficult to decipher exactly what is meant by this statement but it certainly fails to . summarize the evidence and argument the Department advanced at the hearing. The Department, therefore, failed to comply with the rule.

At the hearing, the Deputy Commissioner noted and expanded upon several reasons that the rules were needed and reasonable. The administrative law judge noted, however, that this testimony neither surprised nor prejudiced petitioner's counsel. Indeed, counsel for petitioner submitted an 11–page memorandum setting forth his client's position on subpart 6.B and could have requested a recess to prepare responses to the testimony of the Deputy Commissioner. More importantly, in his final post-hearing submission to the administrative law judge, petitioner's counsel stated he did not believe it was necessary for the administrative law judge to recess the hearing to deal with the inadequacies of the Statement of Need and Reasonableness. Consequently, there is no reason to find the rule was improperly adopted where no prejudice resulted from the defect.

■ Petitioner also argues that the Department failed to demonstrate the need for and the reasonableness of the proposed rule. As mentioned above, the Deputy Commissioner testified to the justifications for proposed subpart 6.B. He noted that (1) the Credit Union Advisory Task Force reviewed and supported the rules; (2) without subpart 6.B, the field-of-membership limitation would be abandoned; (3) at least one credit union has tried to use the "select group" as a way of gaining wide-open membership; (4) the legislature never intended 6.B to be used as a means of gaining possibly infinite membership; and (5) the rule does not impact a credit union's ability to expand its primary field of membership.

Petitioner argues there is no need for the rule because there already is an existing statutory limitation of "common bond" found at Minn.Stat. § 52.05, subd. 1 which provides: "Credit union organizations shall be limited to groups, of both large and small membership, having a common bond of occupation, or association, or to residents within a well-defined neighborhood, community, or rural district." Minn.Stat. § 52.05, subd. 1 (1990). Petitioner also points out that subpart 1.A of the rules also requires the "select group" to comply with the statutory common-bond requirement. Petitioner argues that since the Commissioner can deny a "select group's" petition if it fails to meet the common-bond requirement, there is no need for subpart 6.B. *See* Subpart 5. We disagree. The Department has demonstrated the reasonableness and need for the rule.

■ Petitioner next claims the rule was substantially changed after the hearing. Minn.R. § 1400.1100, Subp. 2 provides:

**Determination of substantial change.** In determining whether a proposed final rule or rule as adopted is substantially different, the administrative law judge or the chief administrative law judge shall consider the extent to which it affects classes of persons who could not have reasonably been expected to comment on the proposed rules at the rulemaking hearing, or goes to a new subject matter of significant substantive effect, or makes a major substantive change that was not raised by the original notice of hearing in such a way as to invite reaction at the hearing, or results in a rule fundamentally different in effect from that contained in the notice of hearing.

The administrative law judge recommended two changes to the proposed rule. First, the administrative law judge noted that the proposed rule allowed for "unbridled" discretion on the part of the Department. The administrative law judge, therefore, recommended that the discretionary language ("may") be replaced with mandatory language ("must" or "shall"). Second, the administrative law judge recommended the rule be clarified so that it was clear the

rule regulated only the existing credit union's speech and not that of individual members. The proposed Subpart 6.B provided:

> B. a statement that solicitations will not be directed at individuals to join the select group as a condition for membership in the credit union.

The administrative law judge recommended the following change:

> B. a statement that the existing credit union will not solicit individuals to join the select group.

The changes narrowed and clarified the original proposed rule. Both the proposed rule and the adopted version prohibit solicitation of individuals to join a select group. In addition, petitioner's counsel submitted a memorandum of law and two supplemental memoranda of law setting forth essentially all of the constitutional arguments raised here prior to the close of the record. In sum, the changes recommended by the administrative law judge and ultimately adopted by the Department are not substantial changes.

Petitioner next argues that its due process rights were violated since it was not afforded an opportunity to respond to two untimely submissions.

 First, petitioner contends that the administrative law judge was substantially influenced by a memorandum submitted by the Minnesota Association of Credit Unions, which supported the proposed rule. The two and one-half page memorandum summarizes the position of the Minnesota Association of Credit Unions and raises no new issues that were not addressed at the hearing. Interestingly, there is no stamp of receipt by the Office of Administrative Hearings. Petitioner's counsel claims it was never submitted at the hearing. In reviewing this matter, the chief administrative law judge noted that "[f]rom the Administrative Law Judge's best recollection, a written statement from the representative of the Minnesota Association of Credit Unions was submitted to him at the hearing." Although the memorandum may or may not have been submitted in a timely fashion, it raised no new issues to which petitioner had not already responded.

Second, petitioner contends the administrative law judge's report was influenced by a memorandum submitted by the Attorney General's Office. The memorandum was dated September 27, 1989. It was contained in an envelope postmarked September 28, 1989 and stamped "received" on September 29, 1989 by the Office of Administrative Hearings. As the record closed for all purposes on September 28, 1989, the memorandum should not have been made part of the record. However, the memorandum is a one and one-half page letter which does not raise any new issues.

In sum, we hold that the rule was properly promulgated despite the minor defects in the rulemaking procedure. None of the defects prejudiced petitioner or denied it the opportunity to be heard.

We hold that the Minn.R. 2675.6400, subp. 6.B is a valid regulation of commercial speech and was properly adopted in compliance with statutory rulemaking procedures.

Affirmed.