**IRONGATE ENTERPRISES, INC., Relator,**

v.

**COUNTY OF ST. LOUIS, Respondent.**

No. A06–1193.

Supreme Court of Minnesota.

Aug. 2, 2007.

---

Thomas R. Wilhelmy, Judy S. Engel, Fredrikson & Byron, P.A., Minneapolis, MN, for Relator.

Barbara A. Russ, Timothy O. Lee, St. Louis County Attorney's Office, Duluth, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Relator Irongate Enterprises, Inc., filed a petition challenging the St. Louis County Assessor's January 2004 valuation of the Irongate Mall, in Hibbing, Minnesota. Respondent County of St. Louis (the county) filed a motion to dismiss the petition, alleging that Irongate failed to comply with Minn.Stat. § 278.05, subd. 6(a) (2006). The tax court granted the county's motion to dismiss and denied Irongate's subsequent motion for reconsideration. Irongate filed a writ of certiorari with our court. We affirm.

In January 2005, Irongate filed a petition contesting the county's January 2004 valuation assessed against its property located in Hibbing, known as the Irongate Mall. Irongate claimed that the property was unfairly and unequally assessed when compared to estimated market values and resulting tax assessments for properties of similar classes and locales. Under the so-called 60–day rule, petitioners challenging a county's valuation of property for tax assessment purposes must provide statutorily enumerated information about the property to the county assessor no later than 60 days after the statutory filing deadline. Minn.Stat. § 278.05, subd. 6(a). The consequence for failing to meet the statutory deadline, with limited exceptions, is dismissal of the petition. Id. Irongate's filing deadline appeared to be April 30, 2005. On June 28, before the 60 day deadline expired, Irongate provided only income statements and rent rolls for the subject property.

On August 17, 2005, the county requested additional documents from Irongate, including copies of the leases for space in the subject property from January 1, 2000, through the date documents were requested. Irongate objected to the request for leases, stating that the request was overly broad and unduly burdensome but that the leases were available for the county's inspection at offices in Los Angeles, California, where the leases were "ordinarily kept in the usual course of business." Irongate also attached a lease abstract to its response to the county's request for document production, which contained the lease information that Irongate determined was relevant to these proceedings.

On December 19, 2005, the county filed a motion to dismiss Irongate's petition for failure to provide the county with copies of the leases, alleging a violation of the 60–day rule. The tax court granted the county's motion, stating that "compliance with the 60 Day Rule requires production of any and all information available to a petitioner seeking to reduce the assessed value of its property" and concluding that Irongate's failure to produce the leases resulted in dismissal of its petition under the 60–day rule. *Irongate Enters., Inc. v. County of St. Louis (Irongate I)*, No. C7–05–600160, 2006 WL 1141191, at *3 (Minn. T.C. Apr. 28, 2006).

Irongate filed a motion for reconsideration of the tax court's order, arguing that all of the income and expense information contained in the leases was also contained in the income statements and rent rolls produced by Irongate. Irongate also argued that the tax court erred in concluding that leases containing income and expense information must be produced under the 60–day rule and such an interpretation renders the rule unconstitutionally vague. Finally, Irongate argued that the tax court confused compliance with the 60–day rule with a discovery dispute between parties because the county did not request the leases until after the 60–day rule had expired. The tax court denied Irongate's motion for reconsideration, concluding that production of the leases was required un-

der the 60–day rule in this case, in addition to the income statements and rent rolls, and that requiring production of the leases did not render the 60–day rule unconstitutionally vague. *Irongate Enters., Inc. v. County of St. Louis (Irongate II)*, No. C7–05–600160, 2006 WL 2506187, at *3 (Minn. T.C. Aug. 25, 2006). Irongate filed a petition for a writ of certiorari to our court, and we address each issue Irongate argued in its motion for reconsideration.

We may review tax court decisions that allegedly fail to conform to law. Minn. Stat. § 271.10, subd. 1 (2006). We review legal issues de novo. *BFW Co. v. County of Ramsey*, 566 N.W.2d 702, 704 (Minn. 1997). Here, the parties do not dispute the facts and agree that only legal issues remain.

## I.

Irongate first argues that the tax court erred in concluding that under Minn.Stat. § 278.05, subd. 6(a), Irongate's failure to provide its leases with mall tenants to the county warranted dismissal of its petition. We review construction of a statute de novo. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 869 (Minn.2006). When a statute is unambiguous, the clear language of the statute shall not be disregarded to pursue the spirit of the law. Minn.Stat. § 645.16 (2006). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Id.

A property owner may challenge a county's assessment of its property if the owner believes that the property has been unfairly assessed in comparison with other property or has been assessed at a valuation greater than its actual value. Minn. Stat. § 278.01, subd. 1(a) (2006). If an owner files a petition to challenge a coun-

ty's valuation, Minn.Stat. § 278.05, subd. 6(a), known as the 60–day rule, provides:

> Information, including income and expense figures, verified net rentable areas, and anticipated income and expenses, for income-producing property must be provided to the county assessor no later than 60 days after the applicable filing deadline contained in section 278.01, subdivision 1 or 4. Failure to provide the information required in this paragraph shall result in the dismissal of the petition, unless (1) the failure to provide it was due to the unavailability of the evidence at the time that the information was due, or (2) the petitioner was not aware of or informed of the requirement to provide the information.[1]

Irongate argues that under the plain language of the 60–day rule, it produced all of the required information to the county, noting that the language of the statute does not require production of leases. Although the 60–day rule does not explicitly mention "leases," the enumerated disclosures are preceded by the word "including," which suggests that those disclosures are not the complete list of "information" contemplated. If the legislature had intended that under the 60–day rule a petitioner was only to provide "income and expense figures, verified net rentable areas, and anticipated income and expenses," then the words "[i]nformation, including" would be superfluous. *See* Minn.Stat. § 645.17 (2006) ("[T]he legislature intends the entire statute to be effective and certain.").

But Irongate argues that the legislature did not believe that leases were included under the 60–day rule disclosures, based on a 1991 amendment to the Minnesota Government Data Practices Act, specifical-

---

1. There is no dispute that Irongate's property is income-producing, and Irongate does not assert that either of the two exceptions provided in subdivision 6(a) applies here.

ly Minn.Stat. § 13.51, subd. 2 (1990), concerning income property assessment data. As enacted in 1981, subdivision 2 classifies types of enumerated data collected from individuals or business entities as nonpublic, including: "(a) Detailed income and expense figures * * *; (c) Verified net rentable areas * * *; (d) Anticipated income and expenses * * *." Act of May 29, 1981, ch. 311, § 30, subd. 2, 1981 Minn. Laws 1427, 1438. In 1991, the legislature amended subdivision 2, adding "(f) lease information" to the nonpublic income property assessment data. Act of May 31, 1991, ch. 291, art. I, § 1, 1991 Minn. Laws 1361, 1364.

Irongate contends that because the original enactment did not include "lease information" and the legislature added the language in 1991, those same terms in the 60–day rule cannot encompass leases; if the legislature believed leases were encompassed by "income and expense figures," "verified net rentable areas," and "anticipated income and expenses," there would have been no need to amend section 13.51, subd. 2, to include lease information. This line of argument ignores that the enumerated data in section 13.51, subd. 2, is a complete list of all nonpublic property assessment data, while the information described in the 60–day rule is only a partial list, and the rule is intended to be broader than what is enumerated, as indicated by the preceding word "including." Further, Irongate's argument fails to consider that information in leases may also be relevant to the categories of information described in the 60–day rule, including income and expense figures, as discussed below.

■ Irongate maintains that its disclosed income statements and rent rolls provided the required information under the three enumerated categories in the 60–day rule, and consequently, there was no reason to provide leases, which contain identical and therefore duplicative information. But the county argues that lease provisions contain additional relevant income and expense information. Specifically, the county asserts that leases typically contain information relevant to the income approach of real estate appraisal, information which was not contained in the incomes statements and rent rolls provided by Irongate. We agree with the county.

We recently addressed the income model of real estate appraisal in *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761 (Minn.2006). In that case, a petitioner/lessee challenged Stearns County's property valuation under Minn.Stat. § 278 and timely provided the county a copy of its lease. Id. at 763–64. The lease required the petitioner to pay certain enumerated real estate expenses. Id. at 764. The tax court dismissed the petition because the petitioner failed to provide the county with statements establishing amounts actually spent on real estate expenses by the petitioner. Id.

We affirmed the tax court, concluding that the petitioner must provide real estate expense information under the 60–day rule, regardless of whether those expenses are paid by the tenant or owner. Id. at 765. We held that tenant-paid real estate expenses are relevant and useful to the appraisal process, and in particular, lease expense information is relevant to the income model of property tax appraisal. Id. at 766. We noted that both the professional literature and the Stearns County appraisal expert concluded that the income model requires information found in leases, specifically the allocation of expenses between owners and tenants. Id. at 766–67. Here, the county submitted an affidavit from Mel Hintz, the St. Louis County Assessor, who reaches a similar conclusion and states that the lease abstracts produced by Irongate are insufficient for valu-

ing the subject property under the income approach.[2]

Irongate neither offers evidence to dispute Hintz's affidavit nor objects to its reasoning but instead argues that "the 60 Day Rule is not and never was designed to provide an assessor with every document he or she might determine necessary to complete a formal appraisal report." We have stated that the 60–day rule "clearly requires the petitioner to provide all information to which the petitioner has access, even if that information might not allow the county assessor to reach a final conclusion regarding the property's value." *BFW Co.*, 566 N.W.2d at 705. In *Stearns,* we affirmed this "broad standard of relevancy," stating that without the information required by the 60–day rule, " 'the assessor could not begin the valuation process.' " 710 N.W.2d at 766 (quoting *Kmart Corp. v. County of Becker,* 639 N.W.2d 856, 861 (Minn.2002)).

We agree with Irongate to the extent that a petitioner challenging a property valuation cannot anticipate *every* document that the assessor might find necessary to complete an appraisal.[3] We recognize the harsh nature of the remedy imposed by Minn.Stat. § 278.05, subd. 6(a), when a petitioner fails to provide sufficient information. But that remedy was enacted by the legislature, and any disagreement with the policy underlying that decision or the rule should be directed to the legislature.

■ Nevertheless, our broad relevancy standard, at the very least, contemplates that petitioners provide all information in the possession of petitioners bearing on the income and expenses attributable to the property, in addition to the other two enumerated categories of information in the 60–day rule. *See also BFW,* 566 N.W.2d at 705 (stating that the petitioner "bears the burden of providing evidence that refutes the original valuation"). Because leases provide information bearing on income and expense data, Irongate could reasonably anticipate providing leases under the 60–day rule. We may encounter a scenario in the future where a petition is dismissed because a petitioner failed to provide information that could not have reasonably been foreseen as a requirement under the 60–day rule, but this is not that case.[4] We hold that the tax

**2.** Hintz also states that leases are necessary in order to identify sources of income, expense caps or stops, details on expense recoveries, noncompete clauses, and renewal options, all of which may affect a property's valuation under the income approach.

**3.** Irongate has brought to our attention that Hennepin County uses a checklist identifying information petitioners must provide to Hennepin County in connection with the 60–day rule. The salutary effect of such a procedure is that it allows the county and petitioners to identify document production disputes before the 60–day rule expires.

**4.** While we share the dissent's concern that the 60–day rule may invite a broad interpretation that could lead property owners into a "guessing game" regarding what must be disclosed, as discussed above, the plain language of the Minn.Stat. § 278.05, subd. 6(a), and

our precedent in *Stearns* directs our decision in this case. The dissent also asserts that the record in this case "does not provide us with information as to the relative equities of this discovery dispute, but in essence that is what it is—a run-of-the-mill discovery dispute." Here, Irongate did not dispute the county's right to review the leases, but rather than simply and routinely providing copies of the leases to the county, a request Irongate objected to as "unduly burdensome," Irongate instead made the leases "available" by inviting the county's representatives to travel to Los Angeles, California, to "inspect [ ]" the leases. We need not delve into the equities of the discovery controversy to resolve this case, but the position taken by Irongate hardly makes this a "run-of-the-mill discovery dispute." While legislative attention to the broad language of the 60–day rule is certainly wise, the implications of our decision today, which essentially turns on the failure of the

court did not err by granting the county's motion to dismiss Irongate's petition.

## II.

Irongate next argues that the tax court's interpretation of the 60–day rule in this case renders the statute unconstitutionally vague because a petitioner cannot anticipate what information must necessarily be disclosed to comply with the rule. Our review of a challenge to the constitutionality of a statute is de novo. *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 421 (Minn.2005). We "presume statutes to be constitutional and exercise the power to declare a statute unconstitutional 'with extreme caution and only when absolutely necessary.'" Id. (quoting *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989)). The party challenging a statute's constitutionality bears the burden of establishing that the statute is unconstitutional beyond a reasonable doubt. *Westling v. County of Mille Lacs,* 581 N.W.2d 815, 819 (Minn.1998).

A statute may be so vague that it violates due process. *See Minn. League of Credit Unions v. Minn. Dep't of Commerce,* 486 N.W.2d 399, 404 (Minn.1992). A statute is impermissibly vague when people of common intelligence must guess at its meaning. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Geiger v. City of Eagan,* 618 F.2d 26, 28 (8th Cir.1980). A statute is not unconstitutionally vague where the words are commonly understood, are judicially defined, or have a settled meaning in law. *Invention Mktg., Inc. v. Spannaus,* 279 N.W.2d 74, 80 (Minn.1979).

Irongate argues that under the tax court's interpretation of the 60–day rule in this case, the information a petitioner is required to produce is not limited to the three enumerated statutory categories but instead construes "information" to mean "any and all information available to a petitioner that any assessor might one day claim to be useful to an appraisal or relevant to the determination of the market value of an income-producing property." Irongate asserts that "[a] requirement that everything related to the ownership, operation and leasing of a shopping center must be provided is meaningless, and unachievable and therefore hopelessly vague and ambiguous."

Irongate overstates the standard of compliance to which it was held under the 60–day rule. The tax court did articulate a broad standard in its order granting the county's motion to dismiss, stating that "the 60 Day Rule requires production of any and all information available to a petitioner seeking to reduce the assessed value of its property." *Irongate I,* 2006 WL 1141191, at *3. But the only issue here is the production of leases, and earlier in its order, the court more narrowly stated that "a lease *containing income and expense information* is required under the 60 Day Rule" and concluded that Irongate failed to comply with the 60–day rule because it did not produce copies of leases. Id. at *2–3 (emphasis added).

More importantly, as discussed, we have further defined the production requirement in the 60–day rule, most recently in *Stearns,* where we stated that petitioners must produce tenant-paid real estate expense information. 710 N.W.2d at 766.[5]

---

property owner to turn over to the county copies of leases, is much more limited than the dissent suggests.

**5.** *Stearns* was decided after Irongate's production deadline had expired, but in that case, we declined to apply the purely prospective ruling doctrine. 710 N.W.2d at 771.

Expense information is one of the enumerated production requirements provided for in Minn.Stat. § 278.05, subd. 6(a). Because the leases at issue here contain information about the allocation of expenses between the owner and store tenants, the plain language of the 60–day rule and our interpretation of that rule required Irongate to produce the leases. Therefore, the statute is not unconstitutionally vague, and Irongate failed to carry its burden of proving that the statute is unconstitutional beyond a reasonable doubt.[6]

■ We acknowledge that a county might argue for dismissal of a petition under the 60–day rule because the property owner failed to timely produce obscure documents or failed to respond to an overbroad document production request. But that is not the issue facing this court; here, Irongate failed to produce key documents (leases), which bear directly on the ability of the property to produce income and, in turn, are directly related to the value of the property. With few exceptions, "a person to whom a statute may constitutionally be applied will not be heard to challenge a statute on the ground that it may conceivably be applied unconstitutionally to others." *Broadrick,* 413

U.S. at 610–11, 93 S.Ct. 2908 (noting that exceptions to this rule include the First Amendment area and where non-parties to a lawsuit stand to lose by its outcome and have no way of preserving their rights); *see also Gonzales v. Carhart,* —— U.S. ——, 127 S.Ct. 1610, 1639, 167 L.Ed.2d 480 (2007) ("It is neither our obligation nor within our traditional institutional role to resolve questions of constitutionality with respect to each potential situation that might develop.").[7]

We hold that the tax court's interpretation of Minn.Stat. § 278.05, subd. 6, did not render the statute unconstitutionally vague.

Affirmed.

Dissenting, ANDERSON, PAUL H., and PAGE, JJ.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent.

At one time, I labored under the impression that I would soon be able to gracefully acquiesce to our court's jurisprudence with respect to the interpretation of Minn.Stat.

---

Therefore, our decision in *Stearns* serves as precedent for our resolution of this case.

6. We note that in 2003, the legislature added a clause to Minn.Stat. § 278.05, subd. 6, which grants a petitioner who failed to provide required information under the 60–day rule an extra 30 days to meet the rule's requirements if "the petitioner was not aware of or informed of the requirement to provide the information." Act of May 25, 2003, ch. 127, art. 2, § 19, 2003 Minn. Laws 731, 776. Because Irongate does not argue that this provision applies in this case, we do not decide whether the provision applies where a petitioner argues that it did not know the 60–day rule required production of certain documents, or whether the provision only pertains to petitioners with no knowledge of the 60–day rule.

7. Irongate also argues that a motion to dismiss under Minn.Stat. § 278.05, subd. 6(a), was an improper method for the county to challenge Irongate's failure to produce lease documents because the county requested production of the leases through a formal discovery request. Irongate asserts that the county's discovery request constitutes an admission by the county that discovery was the proper method to address Irongate's failure to provide the leases. But Irongate cites no legal authority for the proposition that the county was precluded from filing a motion to dismiss under section 278.05, subd. 6(a), because it had previously requested production of the leases. In the absence of such authority, the county was statutorily entitled to proceed in the manner it chose in this case.

§ 278.05, subd. 6(a) (2006)—commonly known as the 60–day rule. Unfortunately, the case before us today does not present such an opportunity. The majority's potentially limitless interpretation of the word *including* essentially turns disclosure procedures for a real property owner into a guessing game in which the end result will all too often be an "I gotcha" that ends in summary dismissal. The majority articulates a rule that is at best, too vague, and at worst, without limits. Based on today's decision, my best advice to property owners who wish to contest their property tax assessment is to crank up the copy machine and provide absolutely everything they have within 60 days.

In the case before us, Irongate provided the county with income statements and rent records for the subject property within the 60–day time frame. Approximately six weeks later, the county asked for additional information including leases for the subject property. Irongate disputed the county's need for this information and asserted that all of the income expense information contained in the leases, and required by the statute, was contained in the income and expense rolls already provided to the county. Irongate did, however, provide a lease abstract which it asserts contained all of the lease information relevant to the tax proceedings. It was only after this dispute over the delivery of the leases arose, that the county, six months after the deadline expired and four months after its request for the leases, filed its motion to dismiss Irongate's petition for failure to comply with the 60–day rule. The record does not provide us with information as to the relative equities of this discovery dispute, but in essence that is what it is—a run-of-the-mill discovery dispute.

The majority's holding turns ordinary discovery disputes into nearly sure-fire grounds for counties to obtain summary dismissal of petitions challenging real property valuations. I do not believe that this is the intended result of the statute. I would reverse the decision of the Minnesota Tax Court and permit this case to go forward on its merits pending resolution of any further discovery disputes.

I respectfully dissent.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.